**Hilda STOLLER, et al., Plaintiffs,**

v.

**BALDWIN–UNITED CORPORATION, et al., Defendants.**

**Civ. A. No. C–1–82–1438.**

United States District Court, S.D. Ohio, W.D.

May 23, 1984.

Gene Mesh, Cincinnati, Ohio, for plaintiffs.

Frederick J. McGavran, Gregory Meurer, Cincinnati, Ohio, John L. Strauch, Cleveland, Ohio, John W. Zeiger, Columbus, Ohio, William R. Hardy, Cincinnati, Ohio, John A. West, Lexington, Ky., Arnold Morelli, Gerald W. Simmons, Leonard A. Weakley, Cincinnati, Ohio, Karl L. Rubinstein, Dallas, Tex., John C. Elam, Columbus, Ohio, for defendants.

## MEMORANDUM AND ORDER

DAVID S. PORTER, Senior District Judge:

This is a securities case involving allegations of market fraud against two Chapter 11 debtors and several other corporations, as well as a number of present and former directors of the debtors. Ripe for decision [1] are motions to stay filed by the nondebtor defendants (docs. 115, 122, 125), together with plaintiffs' responses (docs. 124, 129) and defendants' consolidated reply (doc. 132). Because we do not view the matter as susceptible to all-or-nothing resolution, as apparently sought by the parties, we have concluded that a limited stay will be imposed in the exercise of the Court's inherent power to control its docket, after which time a hearing will be scheduled if deemed necessary to determine whether the stay should continue past the period we order today. Our reasons follow.

Before addressing the parties' assertions, some background is in order. The

---

1. The parties stipulated that motions "shall be considered submitted upon conclusion of the briefing unless oral argument is requested by any party or by the Court" (doc. 19 at 8); no request has been forthcoming, and the papers are ample to permit determination of the issues they raise.

Baldwin-United and D.H. Baldwin reorganization proceedings are, viewed together, perhaps the largest bankruptcy case in American history. The balance sheets contemplate nearly ten billion dollars, and the case involves more than 200 subsidiaries of the debtor corporations. Beyond the staggering complexity of the estates themselves, the insurance commissioners of Arkansas and Indiana have instituted independent reorganization proceedings against certain of the debtors' subsidiaries. The Arkansas proceedings involve two defendants here, National Investors Life Insurance Company (NILIC) and National Investors Pension Insurance Company (NIPIC).

In early March, 1984, the bankruptcy court, concerned that "certain parties in these proceedings are pursuing their own agendas" and that "many of the controversies presented to [it] have little to do with the business of reorganization," determined that all adversary proceedings before it should be stayed for 90 days. *In the Matter of Baldwin-United Corporation, etc.*, Consolidated Case No. 1–83–02495 (Bankr.S.D.Ohio, March 2, 1984) (Newsome, J.). A paragraph from that court's order is significant here:

> One thing is certain: the debtors' assets are quickly being consumed, and may be totally expended, if a halt in the fighting is not imposed. A reasonable estimate of the interim fees requested

for the period from September 26, 1983 to January 31, 1984 comes to a staggering $4 to $5 million. A large portion of these fees were incurred before the adversary proceedings in this Court were filed.

*Id.* at 3. Thus, attorney fees in the bankruptcy proceeding are, by our calculations, amassing at the incredible rate of $35,000 to $40,000.00 *per day*, including Saturdays, Sundays and holidays.

In another development in the bankruptcy court which we consider relevant, Judge Newsome declined these plaintiffs' motion for relief from the automatic stay provision imposed by 11 U.S.C. § 362(a), concluding in part, that because the bankruptcy examiner will be examining the conduct of the debtors during the period relevant herein for evidence of fraud committed by or against the debtors, all parties herein, including plaintiffs, would be best served by maintaining the stay. *In the Matter of Baldwin-United Corporation, etc.*, Consolidated Case No. 1–83–02495 (Bankr.S.D. Ohio, April 17, 1984).[2] In so ruling, the bankruptcy court found as a fact that "the debtors will suffer 'great prejudice' if the stay is lifted." *Id.* at 3. It also found that plaintiffs themselves would not benefit from lifting the stay as against the debtors (*id.*); his reasons for so concluding are reproduced in the margin.[3]

---

**2.** After reviewing the papers, it is difficult to say with confidence precisely what plaintiffs sought from the bankruptcy court in moving to lift the § 362 stay. The contested matter in which the motion had been filed was already before this Court, having been removed here by the bankruptcy court after plaintiffs declined to strike their jury demand from the complaint they filed in the bankruptcy court which parallels the complaint herein. However, no one objected to the bankruptcy court's taking jurisdiction over the motion, and the ruling has not been appealed at this writing.

**3.** First, it goes without saying that every dollar spent by the debtors in defending claims made by potential creditors is one less dollar available to pay those claims. The cost of defending the *Stoller* litigation affords a perfect illustration of this rule.

Second, while it is often more efficient and prudent to allow a creditor to liquidate his

claim in another forum, such is not the case here. Given the time and money required to litigate a securities class action of this magnitude, the interests of all parties would be best served by liquidating the plaintiffs' claims through plan negotiations. In the alternative, their claims could be estimated under the procedure contemplated by § 502(c)(1).

Third, even if some compelling reason existed for litigating the plaintiffs' claims, at least one compelling reason exists for delaying such litigation. In December of 1983 this Court appointed an examiner, Mr. David Greer, to investigate and report on any fraud, dishonesty, misconduct or mismanagement in the debtors' affairs over the past three years. A comprehensive report regarding key company transactions is expected by December, 1984.

While the scope of Mr. Greer's investigation may not precisely coincide with the thrust of the *Stoller* plaintiffs' discovery, it would ap-

As the rulings of the bankruptcy court demonstrate, the various pieces of litigation involving the financial difficulties of the Baldwin empire have taken on a life of their own; without careful judicial stewardship and close scrutiny of the actions of the parties, these cases threaten to escalate into a battle like that of the gingham dog and calico cat, leaving nothing for anyone save lawyers and accountants.

We cannot help but be impressed by the concerns expressed in the rulings of the bankruptcy judge. He has lived with the reorganization proceeding since its inception, and there appears to be substantial agreement with our perception that he is doing a masterful job with an all but impossible task. This case, however, is not directly involved with the reorganization, and, as will be developed later in this memorandum, there are strong equitable concerns operating in both directions. We now turn to an examination of principles relevant to our disposition of the motions before us.

## A. Standard; Burden of Proof

The power of a federal court to stay proceedings before it was set out by Justice Cardozo in *Landis v. North American Co.*, 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936). The Court noted that

the power to stay proceedings is incidental to the power inherent in any court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

*Id.* at 254, 57 S.Ct. at 165 (citations omitted). Even as it provides the authority to stay cases, however, *Landis* counsels careful, if not reluctant, use of the power:

Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both. . . .

We must be on our guard against depriving the processes of justice of their suppleness of adaptation to varying conditions. . . . Even so, the burden of making out the justice and wisdom of a departure from the beaten track lay heavily on the petitioners, suppliants for relief, and discretion was abused if the stay was not kept within the bounds of moderation.

*Id.* at 256, 57 S.Ct. at 166. In *Landis*, the Court concluded that stays imposed pending determination of a dispositive suit then pending before it were "drastic and unusual." *Id.* at 257, 57 S.Ct. at 167.

The moderation directed by *Landis* led the court in *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541 (5th Cir.1983) to conclude that stays in favor of solvent codefendants who were joint tortfeasors pending resolution of the *Manville* bankruptcy proceeding were unjustified. *See also McKnight v. Blanchard,* 667 F.2d 477, 479 (5th Cir.1982) ("stay orders will be reversed when they are found to be immoderate or of an indefinite duration"); *CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288–90 (11th Cir.1982) (district court abused discretion in staying principal case

pear totally senseless for the plaintiffs to proceed with their monumental task until they have the benefit of Mr. Greer's efforts.

Finally, even if the plaintiffs prevailed in the District Court on each of their claims, their victory might well be a hollow one. Their entitlement to distribution appears to be governed by 11 U.S.C. § 510(b), which reads as follows:

Any claim for recission of a purchase or sale of a security of the debtor or of an affiliate or for damages arising from the purchase of sale of such a security shall be subor-

dinated for purposes of distribution to all claims and interests that are senior or equal to the claim of interest represented by such security.

Under this provision, it would appear that the *Stoller* plaintiffs' claims would be subordinate to those of the present holders of securities. Cf. *In re THC Financial Corp.*, 679 F.2d 784 (9th Cir.1982). If the prospect for full recovery by equity security holders in these cases appears dim, the prospect of full recovery by the *Stoller* plaintiffs are even dimmer.

where third-party claims were stayed by operation of Executive Order; *In re Related Asbestos Cases*, 23 B.R. 523, 531–32 (N.D.Cal.1982).

■ We conclude, then, that defendants carry the burden of "mak[ing] out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which [they pray] will work damage to someone else." *Landis*, 299 U.S. at 255, 57 S.Ct. at 166. We do have the discretion [4] to order a stay if a "clear case" is demonstrated. The discretion is far from unfettered, however, particularly where injustice may result to plaintiffs or where the stay sought will be of effectively indefinite duration. *Wedgeworth*, 706 F.2d at 545.

### B. *Lynch v. Johns-Manville*

Less than a year ago, the Court of Appeals for the Sixth Circuit affirmed this Court's refusal to stay an action against joint tortfeasors of a Chapter 11 debtor. *Lynch v. Johns-Manville Sales Corporation*, 710 F.2d 1194 (6th Cir.1983), *aff'g Lynch v. Johns-Manville Sales Corporation*, 23 B.R. 750 (S.D.Ohio 1983) (Spiegel, J.). Defendants here dismiss *Lynch* in a footnote, *see* doc. 122 at 10; doc. 115 at 9). However, the case is not so susceptible to narrow interpretation as defendants suggest, as it includes thoughtful analysis of Congress's intent in passing the automatic stay provision as well as a description of analytical factors relevant here. We therefore examine it in some detail.

*Lynch* is an asbestos case. Plaintiff in the principal case had contracted asbestos-related cancer. As filed, the complaint named two defendants—Johns-Manville and Unarco—who later initiated Chapter 11 proceedings. Naturally, the several thousand asbestos cases pending nationally were stayed as to John-Manville and Unarco, two of the major asbestos manufacturers, by operation of § 362.

Other asbestos manufacturers, concerned by the prospect of joint and several liability in cases where the probable major offenders would not be involved, sought to have the actions stayed as against them as well. In affirming Judge Spiegel's denial of the motions to stay, the Court of Appeals noted that

[i]t is universally acknowledged that an automatic stay of proceeding accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the Chapter 11 debtor.

*Id.*, 710 F.2d at 1196. Proceeding to read the Chapter 11 stay provision *in pari materia* with the stay provision in Chapter 13, 11 U.S.C. § 1301 (which automatically stays proceedings against co-debtors of the bankrupt), the court concluded that "Congress did not envision or intend the § 362 stay to be utilized in a manner other than for the purpose of protecting the debtor and its estate." *Id.* at 1198.

After rejecting the argument that the stay automatically applied to co-tortfeasors, the court considered and rejected the argument that because Johns-Manville and Unarco were assertedly indispensable parties under Rule 19, Fed.R.Civ.P., a stay was mandated. *Id.* at 1198–99.

The final argument the court considered was that in the exercise of its inherent power to control proceedings before it, it should stay the proceedings against the solvent codefendants. A portion of the analysis in that sections appears to be germane:

[T]he solvent co-defendants conjecture that a continuation of proceedings in the absence of J–M and Unarco will result in multiple and piecemeal litigation on a scale heretofore unknown in the history of American jurisprudence; initial litigation would transpire in the state and federal forums and then duplicative litigation would issue in the respective bankruptcy forums for indemnity or con-

---

**4.** To be precise, as we understand it, we have the discretionary right to exercise our inherent power over the cases before us in order to

effectuate a stay if legal and equitable factors so dictate.

tribution thereby adversely impacting upon valuable judicial resources and generating a risk of inadequate and conflicting adjudications....

Confronting these arguments, it is initially observed that any duplicative or multiple litigation which may occur is a direct byproduct of bankruptcy law. As such, the duplication, to the extent that it may exist, is congressionally created and sanctioned.

*Id.* at 1199.

*Lynch* is not, however, on all fours with this case. For one thing, discovery as against the debtors was far more advanced in that case than this. For another, while we do not denigrate the claims of these plaintiffs against those who allegedly defrauded them, their interests are different from those of plaintiffs who were, even as *Lynch* was under submission, deteriorating or dying from their asbestos-related illnesses. Finally, while our own experience with asbestos cases has shown that Johns-Manville is an important actor in the asbestos arena, it cannot be said that such cases rise and fall on the actions of that defendant. In this case, that assertion is persuasively advanced by the moving defendants.

■ We derive several guidelines from *Lynch.* Its tenor leaves little question that, in this circuit, solvent codefendants of a Chapter 11 debtor are entitled to benefit from the fact of a stay as to the debtors only in unusual circumstances. However, the analysis is strongly factual, as demonstrated by the *Lynch* panel's careful weighing of the equities in its case. 710 F.2d at 1199–1200. The case establishes beyond purview, we think, that these defendants cannot seek the benefit of the § 362 stay *per se;* rather, any stay must be based on either considerations such as Rule 19 or upon purely equitable considerations as determined by courts considering invocation of inherent power principles. Finally, the case makes clear that the rights of plaintiffs are quite important in making stay determinations, a rule wholly consistent with the "clear case of hardship or inequity" test set forth in *Landis,* 299 U.S. at 255, 57 S.Ct. at 166.

This framework set out, we turn to the motions filed by the defendant Thompson and others (doc. 118). Because we determine that a limited stay is in order based on issues raised therein, we do not fully analyze the other two motions.

### C. *The Thompson Group's Motion*

■ Joined with defendant Thompson in his motion (doc. 115) are four present or former directors of B–U and Peat, Marwick, Mitchell & Co. They make these arguments. First, that B–U is an indispensable party under Rule 19, Fed.R.Civ.P., without which the case cannot proceed; that continuance of this case will interfere with the ongoing reorganization efforts before Judge Newsome; and that duplicative litigation will result if this case is not stayed. We address these contentions *seriatim.*

### *Rule 19*

As defendants note, "[t]he question whether a party which is 'contingently necessary,' [citation], is also 'indispensable' is addressed to the trial court's sound discretion." Doc. 115 at 4. Whether or not the absence of an indispensable party requires that an action be stayed is a question unresolved by *Lynch,* since the court determined that Manville was not an indispensable party in that case. 710 F.2d at 1198–99. After review of the papers and authorities, we conclude that Baldwin-United is not an indispensable party to the instant action, and so we, too, do not reach the ultimate question.

These defendants suggest that plaintiffs' claims against them are 'secondary claims against secondary and remote defendants" (doc. 115 at 6). This argument fails as to many or all of these movants, because 15 U.S.C. § 78t(a) provides:

Every person who, directly or indirectly, controls any person liable under any provision of this chapter ... shall also be liable jointly and severally with and to the same extent as such controlled per-

son to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

Hence, we cannot agree that members of the board of directors which piloted Baldwin-United during the period in which plaintiffs' claims arose are "secondary claims against secondary and remote defendants." Where liability is joint and several, it is neither remote nor secondary.[5] More to the point, *Lynch* directly teaches that where liability is joint and several, a case will not be stayed under Rule 19. Thus, while the determination of whether a permissive or "contingently necessary" party is indispensable may be committed to our discretion, we think that, in view of *Lynch*, discretion would be abused if we utilized such an analysis to defeat the clear intent of 11 U.S.C. § 362(a)(1).

As a further impediment to the use of Rule 19, we note Judge Spiegel's concern in his opinion in *Lynch* that Rule 19 contains no language permitting a stay; rather, where an indispensable party is not joined, the Rule sets forth dismissal if the "equity and good conscience" test of Rule 19(b) compels relief under the Rule. *Lynch,* 23 B.R. at 754.

### D. *Harm to the Reorganization*

■ As noted in *Lynch*, the § 362 stay is designed to protect the debtor, as opposed to those liable with the debtor. In seeking to bring this case within the purview of that concept, movants assert that "further proceedings in this action will jeopardize the Bankruptcy Court's efforts to reorganize Baldwin and defeat by indirection the automatic stay," a result which, they assert, is "entirely inconsistent with the Con-

gressional purpose expressed in § 362" (doc. 115 at 8, 11). Authority is cited for the proposition that it is sometimes appropriate to order a stay in favor of a debtor's directors, officers, and related parties.

Plaintiffs' response to this is that any damage done to the reorganization would be minimal. They assert the other side of the coin as a compelling factor:

If plaintiffs are not allowed to proceed with their claims against the non-debtor defendants while the Chapter 11 proceeding lurches forward, then at the time a plan of reorganization is presented they will still have an unliquidated claim to be swept under the table in a 'cram-down' by the debtors. In addition, there is always the concern that memories will not be as sharp and documents may be lost or misplaced which are responsive to discovery requests, if the action is stayed.

Doc. 124 at 13.

Plaintiffs' argument is not wholly persuasive for two reasons. As to the potential for loss of their claim in a "cram down," we note that it is the present intention of the debtors to try to formulate a plan by the end of 1984. While that expectation may well face later revision, it seems likely that a plan will be formulated before this action could reasonably be expected to reach judgment. Two other observations are relevant here. First, while these plaintiffs are entitled to their day in court, we are hesitant to sanction what would become a race to judgment between this and the bankruptcy forum. Second, to reiterate, plaintiffs assert that, by operation of 15 U.S.C. § 78t(a), the liability of the defendants here, as "controlling persons," is joint and several with that of the debtors. That being so, it seems that plaintiffs will not lose their claims against these defendants.

---

5. We need not, at this time, conclude that in fact § 78t will carry the day for plaintiffs as to joint and several liability in this case. The burden of proving that the statute applies will ultimately rest upon plaintiffs. However, in the context of the motions at bar, the burden is on defendants to demonstrate that their case presents an exception to what we view as the general rule that

stays as to nondebtors are inappropriate. *See Landis,* 299 U.S. at 255, 57 S.Ct. at 166. Given the existence of the statute and the liberal interpretation which it is afforded, *see Holloway v. Howerdd,* 536 F.2d 690, 698 (6th Cir.1976) (Edwards, J., concurring), defendants have not met that burden.

As to the potential for fading memory or misplaced records, the impact of that concern is blunted by the fact that the bankruptcy examiner will be conducting an investigation into whether fraud occurred in the recent corporate past of the debtors. As already noted, the bankruptcy court, in denying these plaintiffs' motion for relief from the § 362 stay, concluded that

[w]hile the scope of Mr. Greer's investigation may not precisely coincide with the thrust of the *Stoller* plaintiffs' discovery, it would appear totally senseless for the plaintiffs to proceed with their monumental task until they have the benefit of Mr. Greer's efforts.

*In the Matter of Baldwin-United Corporation, etc.,* Doc. No. D–11 at 4.

There are other factors which concern us as regards potential harm to the debtors in the event that the motions at bar are flatly denied. In their papers in the bankruptcy court, plaintiffs made an argument which, particularly in light of Judge Newsome's decision not to lift the stay, bears repeating here in part:

As the complaint in the securities action reveals, the claims against Baldwin are inextricably interwoven with the claims of the solvent co-defendants, and arise from the same factual and legal basis as the claims against the solvent co-defendants. The claims of fraud center on financial transactions of Baldwin, will involve an analysis of what the debtors did or did not do, what the debtors represented they did, whether or not the co-defendants had knowledge of the actions and intentions of the debtors and whether they participated in the acts complained of by plaintiffs. To deal with these points without the ability to participate in further discovery with the debtors could create harm to the plaintiffs in

the securities litigation. Moreover, if plaintiffs are to carry on discovery of the solvent co-defendants in the securities litigation pending in the district court without the ability to carry on discovery of the debtors until some time in the future will result in wasteful duplication. The fragmentation of such claims and discovery will waste judicial resources, and may result in prejudice to the rights of the solvent co-defendants and plaintiff shareholders.

Doc. D–1 in Consolidated Case No. 1–83–02495, Adversary Proceeding No. 1–83–0599 at 6 (Bankr., S.D.Ohio).

Little need be changed in that passage to turn it into the argument of defendants herein. We can only conclude that, candidly assessing their position, plaintiffs would agree that they will be sorely hampered in their efforts if this case proceeds in its present status against the non-debtor defendant.[6]

Defendants also assert that, regardless of plaintiffs' discovery requirements, their own defense will be well-nigh impossible to prepare without discovery from the debtors. We credit this assertion.

■ As the foregoing intimates, we are persuaded by the defendants' arguments that the efforts of the bankruptcy court and the rights of the creditors of the estates will suffer if this litigation is not stayed. This is not to say that there are no equities running in favor of plaintiffs, for there are: Taking the allegations of the amended consolidated supplemental complaint as true, plaintiffs were sorely grieved, and have every right to seek redress and to obtain adjudication of their claims as quickly as possible. We noted no recognition of that fact in defendants' submissions. We are,

---

**6.** We do note that in *Lynch,* 710 F.2d at 1200, the court's judgment was "without prejudice to the appellants to seek, in the appropriate forum, authorization to conduct discovery upon Johns-Manville and Unarco." Thus, if and when the stay we order today is dissolved, either this Court or the bankruptcy court will be in a position to consider whether, under narrowly drawn guidelines, discovery against the debtors will be possible. For example, it may become appropriate for a representative of each litigation team to observe discovery conducted by Examiner Greer as to the debtors' activities regarding the MGIC acquisition; however, such matters are not presently before the Court.

however, persuaded by the logic of the bankruptcy court, as well as by plaintiffs' own analysis in their papers in that court, that there is little benefit to plaintiffs by permitting this case to go forward at this time.[7]

We therefore determine that a stay is appropriate, and we explicitly make that determination in exercise of "the power to stay proceedings [which] is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis*, 299 U.S. at 254, 57 S.Ct. at 165. That determination is only half the battle, however, as we are constrained to conclude that it is not proper either to grant an indefinite stay or to condition lifting the stay upon resolution of the reorganization proceedings.[8] We therefore determine that the case will be stayed as to all defendants until December 31, 1984.

The benefits of the stay we now order are, we find, as follows.

First, it comports with the efforts of the bankruptcy court and of the Arkansas reorganization proceeding to require a breathing spell to continue in effect until, we hope, it becomes more feasible to determine the impact of this litigation on the reorganization. Were we to permit this litigation to resume at speed, much of the practical benefit to be derived from the slowdowns in those courts might be nullified.

Second, it permits this Court to determine issues now before it. Those include the many motions to dismiss now pending,[9] as well as the pending appeal from the bankruptcy judge's determination that the estates of the debtors could advance funds to cover the defense costs of the present and former directors of the debtors in this and other litigation pending in this and other courts.

Third, it permits a period of time in which the bankruptcy court's conclusion that these plaintiffs might be able to benefit from the labors of the examiner in bankruptcy can be put to the test. We envision that once those efforts have been in progress for some time, a reasoned evaluation of the possibility that these plaintiffs can ride on the examiner's coattails can be made.

Fourth, it contemplates the possibility that the Arkansas proceedings, which are infinitely less complex, we understand, than those in the bankruptcy court, may be completed, or nearly so, by the end of the stay period. We note in this regard that the motion to stay filed by NILIC and NIPIC raises serious questions which will have to be addressed in the event that it is determined that this case can proceed against some or all of the non-debtor defendants.

Fifth, it acknowledges the points raised by the non-management directors in their motion that their involvement in the reorganization effort is now at its peak. We

---

7. Putting it another way, we are unpersuaded that a stay of the definite and, in terms of the reality of contemporary litigation, moderate duration ordered today will "work damage to" plaintiffs. *Landis,* 299 U.S. at 255, 57 S.Ct. at 166. The persuasive showing made by defendants, the reasoned findings of the bankruptcy court as to the lack of benefit to plaintiffs from proceeding, and the candid tenor of plaintiffs' own remarks in their papers in the bankruptcy court combine to convince us that plaintiffs' interests will suffer less from temporarily staying this case until some of the smoke clears in the bankruptcy court than they now assert.

8. We reject defendants' contention that proceedings against them should be stayed because of

the prospect for duplicative litigation. Such rejection is, we think, appropriate in light of the court's observation in *Lynch* that "any duplicative or multiple litigation which may occur is a direct byproduct of bankruptcy law. As such, the duplication, to the extent that it may exist, is congressionally created and sanctioned." 710 F.2d at 1199. However, duplication of litigation is a different problem from interference with proceedings in another court, and we think it best to "halt the fighting" in this Court for the time being to avoid the latter.

9. Counsel and the Court agreed in late 1983 that the stay motions would be submitted and ruled upon prior to our taking up the motions to dismiss and other pending motions.

assume that those efforts will ease as time passes, and that the potential for inconvenience to the reorganization effort due to the demands placed upon those defendants by virtue of their involvement in the defense of this case will decline as reorganization continues, particularly if they are aware that this case may return to active status after the stay period ordered today.[10]

We will accept status reports in mid-December, 1984, regarding the progress of the reorganization effort and, in particular, the progress of Mr. Greer toward evaluating whether or not fraud occurred in the MGIC acquisition. We also invite comment as, in effect, friends of the court, from Bankruptcy Judge Newsome and Examiner Greer as to their impressions regarding the possibility that steps can be taken to advance this case while minimizing harm to their efforts.

In closing, it should be clear that we do not anticipate that the stay we order today will be extended for the pendency of the reorganization. Whether or not it is extended past the present expiration date will depend on the situation at the time. However, as time elapses, it will be progressively more difficult for the defendants to carry their burden of demonstrating that a continued stay is appropriate.

We have considered whether or not it is appropriate to certify the decision to stay this case to the Court of Appeals under 28 U.S.C. § 1292(b). We decline to certify the matter at the present time. However, in the event that we later determine to continue the stay, we will entertain requests for such relief.

All proceedings herein are stayed until December 31, 1984.

SO ORDERED.

---

10. The outside directors' motion asserts that their involvement with the reorganization centers around evaluation of divestiture efforts as part of the formulation of a plan of reorganization. As such, the submission of a plan may be expected to lessen their responsibilities in the bankruptcy proceeding. We caution, however, that we see little merit to the assertion that mere involvement by an individual in a reorganization effort is relevant to whether or not litigation pending against him should go forward.