765 F.2d 343
 54 USLW 2027, 12 Collier Bankr.Cas.2d 1352,
13 Bankr.Ct.Dec. 425, Bankr. L. Rep. P 70,586
 In re BALDWIN-UNITED CORPORATION LITIGATION.
Vincent ERTI, Joseph and Elizabeth Chupko, George and
Margaret Ledney, William Neil Aicholtz and Janet Aicholtz
and Genevieve Novicky On Behalf of Themselves And All Others
Similarly Situated, Plaintiffs,
v.
PAINE WEBBER JACKSON & CURTIS, INC., Paine Webber Group,
Inc., Paine Webber, Inc., PWJC Insurance Sales,
Inc., Planco Inc., Donald B. Marron and
Donald E. Nickelson, Defendants.
PAINE WEBBER GROUP, INC., Paine Webber Incorporated and PWJC
Insurance Sales, Inc., Third-Party-Plaintiffs-Appellees,
v.
BALDWIN-UNITED CORPORATION and D.H. Baldwin Company,
Third-Party-Defendants-Appellants.
 No. 1391, Docket 85-5040.
 United States Court of Appeals,
Second Circuit.
 Argued June 6, 1985.
Decided June 17, 1985.
 
 Richard G. Parker, Washington, D.C. (Zoe E. Baird, O'Melveny & Myers, Washington, D.C., Robert J. White, O'Melveny & Myers, Los Angeles, Cal., on brief), for third-party-defendants-appellants.
 Eva H. Posman, New York City (Martin P. Unger, Andrew Levchuk, Charles F. Vihon, Gaston Snow Beekman & Bogue, New York City, on brief), for third-party-plaintiffs-appellees.
 Bernard Shapiro, Richard S. Berger, Paul S. Aronzon, Howard J. Weg, Gendel, Raskoff, Shapiro & Quittner, Los Angeles, Cal., filed a brief for amicus curiae Official Committee of Unsecured Creditors Holding Claims against Baldwin-United Corp.
 Before LUMBARD, MANSFIELD and NEWMAN, Circuit Judges.
 JON O. NEWMAN, Circuit Judge.
 
 
 1
 This appeal presents, in a somewhat unusual form, a dispute concerning the appropriate sequence of litigation as between two federal courts. Baldwin-United Corporation and its wholly owned subsidiary, D.H. Baldwin Company (collectively "Baldwin"), currently in Chapter 11 reorganization proceedings in the Bankruptcy Court in the Southern District of Ohio, appeal from an order of the District Court for the Southern District of New York (Charles L. Brieant, Judge) enjoining them from seeking any relief in any court against any defendant in a large group of securities fraud actions consolidated for pretrial proceedings in multi-district litigation in the Southern District of New York. The injunction applies to claims that have been or may be asserted in the multi-district proceeding. Fundamentally at issue is whether the Bankruptcy Court in Ohio or the District Court in New York ought to be the first court to determine whether the automatic stay arising from the filing of the Chapter 11 proceedings, see 11 U.S.C. Sec. 362 (1982), applies to indemnity and contribution claims filed against Baldwin after the filing of the Chapter 11 petition but based on facts occurring prior to the filing of that petition. We conclude that the Bankruptcy Court is entitled to determine the applicability of its stay and, under the circumstances of this case, should be permitted to do so. We therefore vacate the injunction.
 
 BACKGROUND
 
 2
 Baldwin, through its insurance company subsidiaries, has issued to a large number of purchasers throughout the country Single Premium Deferred Annuities ("SPDAs"). Subsequently the insurance subsidiaries were placed in state rehabilitation proceedings in Arkansas and Indiana, creating uncertainty as to the return that policyholders would receive on the annuities they had purchased. These developments led to the filing of involuntary Chapter 11 proceedings against Baldwin on September 26, 1983, in the Bankruptcy Court for the Southern District of Ohio. Baldwin consented to the Chapter 11 proceedings the following day. The Chapter 11 proceedings are exceedingly complex, involving approximately $9 billion in assets, $14 billion in claims, and more than 8,000 claimants.
 
 
 3
 Beginning on September 29, 1983, three days after the filing of the Chapter 11 proceedings, holders of SPDAs sued various broker-dealers that had marketed these policies,[1] alleging securities fraud and related claims. One such suit was filed by Vincent Erti against Paine Webber Jackson & Curtis, Inc. ("Paine Webber") and related companies and officials. On February 24, 1984, the Erti suit and 39 similar suits against Paine Webber and other broker-dealers were consolidated for pretrial proceedings in MDL No. 581 by the Judicial Panel on Multidistrict Litigation, see 28 U.S.C. Sec. 1407 (1982), and assigned to Judge Brieant. In re Baldwin-United Corporation Litigation, 581 F.Supp. 739 (J.P.M.D.L.1984). Many more suits by purchasers of SPDAs have since been consolidated into MDL No. 581. Judge Brieant directed that one consolidated complaint be filed against each broker-dealer, and a class action against Paine Webber has been filed under the caption Erti, et al. v. Paine Webber Jackson & Curtis, Inc., et al., 83 Civ. 9085 (CLB).
 
 
 4
 On July 24, 1984, Paine Webber filed a proof of claim in the Bankruptcy Court in Ohio pursuant to 11 U.S.C. Sec. 501. The proof of claim, totaling approximately $700 million, asserts claims for indemnity and contribution in connection with the Erti class action, various pending state court actions, and any similar suits that may be filed against Paine Webber in the future. On February 19, 1985, Paine Webber filed a third-party complaint against Baldwin in the Erti class action in the Southern District of New York. The third-party complaint alleged claims for contribution and indemnity similar to those alleged in the proof of claim filed in the Chapter 11 proceedings. With litigation concerning the SPDAs and Baldwin's liability to Paine Webber arising from their sale thus pending in two courts, there ensued the events immediately precipitating the injunction challenged on this appeal.
 
 
 5
 On March 4, 1985, counsel for Baldwin contacted counsel for Paine Webber to seek agreement to an extension of time for Baldwin to file an answer to the third-party complaint in Erti. The answer was due March 11. Baldwin informed Paine Webber that in Baldwin's opinion the third-party complaint was subject to the automatic stay that arose on September 26, 1983, when the Chapter 11 proceedings were filed. See 11 U.S.C. Sec. 362(a)(1). Baldwin explained that it sought the extension of time to avoid the necessity of seeking from the Bankruptcy Court a temporary restraining order to prevent entry of a default judgment on the third-party complaint in the District Court. Baldwin offered to stipulate to an expedited briefing schedule before the Bankruptcy Court to secure a prompt resolution of the matter, thereby alerting Paine Webber that Baldwin intended to have the Bankruptcy Court determine the applicability of its own stay. On March 5, Paine Webber said that it would agree to extend Baldwin's time to plead to the third-party complaint. Baldwin said it would bring the proposed stipulation to Paine Webber's counsel on the following morning, March 6.
 
 
 6
 On the morning of March 6, however, Paine Webber sought and obtained from Judge Brieant ex parte a temporary restraining order barring Baldwin from applying to the Bankruptcy Court in Ohio "for declaratory or injunctive relief which would purport to determine, affect or interfere, directly or indirectly with [the District] Court's jurisdiction over the third-party complaint against Baldwin...." Paine Webber argued to Judge Brieant that its third-party complaint against Baldwin was not subject to the automatic stay of section 362. Reliance was placed on the Third Circuit's recent decision in Avellino & Bienes v. M. Frenville Co. (In re M. Frenville Co.), 744 F.2d 332 (3d Cir.1984), cert. denied, --- U.S. ----, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985). Frenville held that third-party claims for non-contractual contribution and indemnity filed after the date of the Chapter 11 petition are post-petition claims, not subject to the automatic stay, even though based on facts occurring pre-petition, if under state law the third-party claims may not be pleaded until the third-party plaintiff has been sued by the primary plaintiff and if the primary suit is filed post-petition.
 
 
 7
 On March 11, Judge Brieant held a brief hearing on Paine Webber's application for a preliminary injunction. In the course of the hearing, Judge Brieant expressed the view that the District Court, rather than the Bankruptcy Court, was the appropriate court to determine the scope of the automatic stay, that Frenville was correct in ruling that a third-party complaint for contribution and indemnity filed after a Chapter 11 petition was a post-petition claim beyond the scope of the automatic stay, that the Second Circuit would agree with the Frenville decision, and that it would be an "unnecessary and improper intrusion on the jurisdiction" of the District Court if the Bankruptcy Court were to determine that the stay applied to Paine Webber's third-party complaint. Accordingly, he issued a preliminary injunction, set forth in a written order on March 26, 1985, prohibiting Baldwin or the Trustee for Baldwin "from applying for injunctive, declaratory or other relief from any Court other than [the District] Court, against any defendant in any action presently before or hereafter assigned or transferred to [the District] Court ... for inclusion in ... MDL-581 ... with respect to claims asserted or which might be asserted in any action which is part of MDL-581...." Then, expressing concern that the reorganization of the debtor not be unduly burdened, Judge Brieant stayed, pending further order of the Court, both the time within which Baldwin must answer the third-party complaint and all discovery of Baldwin by any party to MDL No. 581. This appeal was taken from the March 26 order.
 
 DISCUSSION
 
 8
 The parties sharply differ not only as to the correctness of the injunction but also as to the issues that ought to be resolved in determining its correctness. Baldwin urges us to rule that the District Court lacks jurisdiction to determine the scope of the automatic stay. Paine Webber urges us to turn immediately to the merits and rule that the automatic stay does not apply to the third-party complaint. Our analysis steers a course between the extreme positions urged upon us by the parties, though we conclude, in agreement with Baldwin, that the District Court's injunction should not have been issued.
 
 
 9
 The initial issue is whether the District Court has jurisdiction to determine the applicability of the automatic stay. We conclude that it does. Baldwin does not dispute that the Erti class action, including the third-party complaint against Baldwin, would unquestionably be within the subject matter jurisdiction of the District Court if the automatic stay did not exist. Whether the stay applies to litigation otherwise within the jurisdiction of a district court or court of appeals is an issue of law within the competence of both the court within which the litigation is pending, see, e.g., SEC v. First Financial Group of Texas, 645 F.2d 429, 436-40 (5th Cir.1981) (approving District Court's determination that pending litigation was exempted from the automatic stay by exception for actions by governmental unit to enforce police or regulatory power, 11 U.S.C. Sec. 362(b)(4); NLRB v. Evans Plumbing Co., 639 F.2d 291 (5th Cir.1981) (determining that enforcement proceeding in Court of Appeals was exempted from stay by section 362(b)(4)), and the bankruptcy court supervising the reorganization, see, e.g., Avellino & Bienes v. M. Frenville Co. (In re M. Frenville Co.), supra (recognizing authority of Bankruptcy Court to determine the reach of its stay but disagreeing on the merits); Johns-Manville Corp. v. Asbestos Litigation Group (In re Johns-Manville Corp.), 40 B.R. 219 (D.C.S.D.N.Y.1984) (affirming Bankruptcy Court's determination of applicability of stay); Commercial Union Insurance Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.), 31 B.R. 965 (D.C.S.D.N.Y.1983) (same). The court in which the litigation claimed to be stayed is pending has jurisdiction to determine not only its own jurisdiction but also the more precise question whether the proceeding pending before it is subject to the automatic stay.[2] Whether it ought to exercise its authority to make such a determination, however, is a different question.
 
 
 10
 Though the District Court in the instant litigation had jurisdiction to determine the scope of the stay, its issuance of the injunction challenged on this appeal was a misuse of its equitable power. By prohibiting Baldwin from applying to the Bankruptcy Court in Ohio for any relief against any defendant in MDL No. 581 the injunction improperly interferes with the reorganization proceedings in two significant respects. First, the injunction prevents Baldwin from invoking the vital authority of the Bankruptcy Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. Sec. 105(a). Even if it should ultimately be determined that the automatic stay under section 362 does not apply to Paine Webber's third-party complaint, the Bankruptcy Court has authority under section 105 broader than the automatic stay provisions of section 362 and may use its equitable powers to assure the orderly conduct of the reorganization proceedings. See Johns-Manville Corp. v. Asbestos Litigation Group (In re Johns-Manville Corp.), supra; In re Lake, 11 B.R. 202 (Bkrtcy.S.D.Ohio 1981); 2 Collier on Bankruptcy p 105.02 (15th ed. 1985). We recognize that the District Court also has power to issue all writs in aid of its jurisdiction, 28 U.S.C. Sec. 1651, and its duty to assure orderly pretrial proceedings in the multi-district litigation assigned to it is important. However, to whatever extent a conflict may arise between the authority of the Bankruptcy Court to administer this complex reorganization and the authority of the District Court to administer consolidated pretrial proceedings, the equities favor maintenance of the unfettered authority of the Bankruptcy Court. The normal need to proceed expeditiously in any reorganization without time-consuming and costly distractions in other districts is heightened in Baldwin's Chapter 11 proceedings by virtue of a settlement reached with the insurance administrators supervising the rehabilitation of Baldwin's insurance subsidiaries. A condition of that settlement is the confirmation of a plan of reorganization by January 15, 1986, an objective toward which the Bankruptcy Court is striving valiantly. Though the District Court has not purported to enjoin the Bankruptcy Court itself, the injunction's prohibition of the debtor's opportunity to apply to the Bankruptcy Court for any relief under section 105 against any defendant in MDL No. 581 unduly interferes with the proper administration of the reorganization.
 
 
 11
 Second, the injunction prevents Baldwin from applying to the Bankruptcy Court for a determination of whether the automatic stay applies to Paine Webber's third-party complaint. The District Court has decided that it, rather than the Bankruptcy Court, will determine the applicability of the stay. The injunction order has a two-fold effect in this regard: It prevents the Bankruptcy Court from construing its own stay with respect to any defendant in MDL No. 581,[3] and it reflects the District Court's implicit ruling that the stay is inapplicable to the third-party complaint.[4] In the circumstances of Baldwin's Chapter 11 reorganization, the equities do not warrant either preventing the Bankruptcy Court from construing its stay or determining in the District Court whether the stay applies. The reorganization proceeding involves an extraordinarily large number of claimants. Many of these, like Paine Webber, have presented claims for contribution and indemnity that require determination of the applicability of the automatic stay. See Baldwin-United Corp. v. Named Defendants (In re Baldwin-United Corp.), Cons. Case No. 1-83-02495, Adv. No. 1-85-0155 (Bankr.S.D.Ohio Apr. 10, 1985). If the applicability of the stay to contribution and indemnity claims filed in response to post-petition first-party complaints but arising out of pre-petition conduct is determined in various district courts throughout the country, the ability of the Bankruptcy Court to assure equality of treatment among creditors will be seriously threatened. Of course, even in the face of conflicting views among different district courts and different courts of appeals as to the reach of the stay, the necessary uniformity on issues of law affecting the Baldwin reorganization could ultimately be achieved by the Supreme Court. However, it is not a sound use of the District Court's equitable power to precipitate the need for such ultimate umpiring and surely inadvisable to create the risk that conflicts as to the reach of the stay will remain unresolved. See Cooper v. United States, --- U.S. ----, 105 S.Ct. 2664, 85 L.Ed.2d 281 (1985) (White, J., dissenting from denial of certiorari in the face of conflicting decisions of two circuits on construction of federal statute). The necessary uniformity is best achieved by centralizing construction of the automatic stay in the Bankruptcy Court, subject to review in the Sixth Circuit, with ultimate review in the Supreme Court available if warranted. The possibility of conflicting decisions is far more serious in this complex Chapter 11 proceeding with its numerous indemnity claimants than would be the case when a District Court determines that a particular governmental enforcement action is within one of the exceptions to the automatic stay. See SEC v. First Financial Group of Texas, supra.
 
 
 12
 In addition to the paramount interest of assuring uniformity of decision concerning the reach of the automatic stay in the Chapter 11 reorganization, other factors weigh against the District Court's use of its equitable power. Paine Webber's claim for indemnity and contribution was filed as both a proof of claim in the Bankruptcy Court and as a third-party complaint in the District Court. Even on Paine Webber's view that the third-party complaint is a post-petition claim because it could not have been filed until Paine Webber had been sued by the SPDA purchasers, the original Erti complaint was filed on December 14, 1983. Thereafter, Paine Webber elected to file its proof of claim on July 24, 1984, before it filed its third-party complaint on February 19, 1985. The normal priority to be accorded the court in which proceedings are first initiated, see Meeropol v. Nizer, 505 F.2d 232, 235 (2d Cir.1974), ought to be followed here, at least to the extent of permitting the Bankruptcy Court to give initial consideration to the proof of claim in order to determine whether it is a pre- or post-petition claim for purposes of the automatic stay.
 
 
 13
 Moreover, the facts indicate that Baldwin was proceeding expeditiously to secure a determination from the Bankruptcy Court as to the reach of the stay and was preempted by Paine Webber's maneuver only because Baldwin informed Paine Webber of its litigating plans. Once informed that a ruling would be sought in the Bankruptcy Court, Paine Webber then acted within 48 hours to have the stay construed (initially, ex parte ) in the District Court. Its litigating stance with respect to the reach of the stay reveals few, if any, equities in its favor.
 
 
 14
 For all of these reasons, we conclude that the injunction issued by the District Court should not have been issued, and it is hereby vacated. The mandate shall issue forthwith.
 
 
 
 [1]
 By referring to an SPDA as a "policy" or by any other term in this opinion, we intimate no view on the point at issue in the District Court as to whether an SPDA is a "security" within the meaning of federal securities statutes
 
 
 [2]
 Baldwin cited our decision in Fidelity Mortgage Investors v. Camelia Builders, Inc. (In re Fidelity Mortgage Investors), 550 F.2d 47 (2d Cir.1976), cert. denied, 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977), in support of its contention that the District Court lacks jurisdiction to determine the applicability of the automatic stay. We do not read that decision to go so far. The issue in that case was whether the Bankruptcy Court in which a Chapter 11 petition was pending had properly found two creditors in contempt of the automatic stay for initiating proceedings in the District Court for the Southern District of Mississippi. The creditors sought to establish the priority of a lien on property in Mississippi over a deed of trust held by the debtor on the same property. The appeal from the contempt adjudication presented the issue, among others, of whether the automatic stay applied to the creditors' suit. This Court ruled that it did. Id. at 54. Having reached that conclusion, we then observed that the creditors were required to seek the permission of the Bankruptcy Court before proceeding with their suit in Mississippi. Id. at 57. The opinion does not purport to decide whether the District Court in Mississippi had or lacked jurisdiction to determine the applicability of the stay. Perhaps the fact that the Mississippi Court took some steps with respect to the creditors' suit, requiring the debtor to deposit funds with the Court, reflected that Court's implicit view that the stay did not apply. Arguably affirmance of the contempt might then mean that a creditor can be held in contempt by a bankruptcy court for violating a stay, even if the forum in which the violation occurred believed that the stay did not apply. Rather than speculate on what this Court may have thought the Mississippi Court may have ruled, we simply note that Judge Smith's opinion for this Court at no point states that the Mississippi Court lacked jurisdiction to determine the reach of the stay
 
 
 [3]
 The Bankruptcy Court has ruled, with respect to defendants not included in MDL No. 581, that claims for contribution and indemnity similar in pertinent respects to the claim of Paine Webber's are subject to the automatic stay. Baldwin-United Corp. v. Named Defendants (In re Baldwin-United Corp.), Cons. Case No. 1-83-02495, Adv.No. 1-85-0155 (Bankr.S.D.Ohio Apr. 10, 1985). In so ruling, the Bankruptcy Court explicitly disagreed with the Third Circuit's decision in Frenville
 
 
 [4]
 We are not as certain as the District Court that, if we reached the issue, we would follow Frenville and hold the stay inapplicable to Paine Webber's third-party complaint. The broad definition of "claim" in the Bankruptcy Code, a "right to payment, whether or not such right is ... unliquidated ... contingent ... unmatured ...," 11 U.S.C. Sec. 101(4)(A), creates a substantial question whether the stay applies to the third-party complaint. In view of our disposition of this appeal, we do not decide that question