**In re BALDWIN–UNITED CORPORA-TION, et al., Debtors and Debtors in Possession.**

**BALDWIN–UNITED CORPORATION and D.H. Baldwin Company, Plaintiffs-Appellees,**

**v.**

**PAINE WEBBER GROUP, INC., et al., Defendants-Appellees.**

Civ. A. No. C–1–85–1509.

United States District Court, S.D. Ohio, W.D.

Oct. 22, 1985.

Robert O. White, Richard G. Parker, Zoe
E. Baird, O'Melveny & Myers, Washington,
D.C., and Don R. Gardner, Keating, Mue-
thing & Klekamp, Cincinnati, Ohio, for
Baldwin-United and D.H. Baldwin Co.

Eva H. Posman, Gaston, Snow, Beekman
& Bogue, New York City, for Paine Web-
ber and Rotan Mosle.

Bryan, Cave, McPheeters & McRoberts,
St. Louis, Mo., for Edw. D. Jones & Co. and
Stifel Nicolaus.

Drinker, Biddle & Reath, Philadelphia,
Pa., for W.H. Newbold's Son & Co.

Faegre & Benson, Minneapolis, Minn.,
for Piper, Jaffray, Hopwood, Inc.

Waller, Lansden, Dortch & Davis, Nash-
ville, Tenn., for J.C. Bradford & Co.

Esanu, Katsky, Korins & Siger, New
York City, for Planco, Inc.

## MEMORANDUM AND ORDER

DAVID S. PORTER, Senior District
Judge:

This matter is before this Court on ap-
peal, pursuant to 28 U.S.C.A. § 158(a)
(West Supp.1985), from a final order of the
United States Bankruptcy Court for the
Southern District of Ohio, Western Divi-
sion. The order appealed from was en-
tered July 30, 1985 in Adversary No. 1–85–
0251, granting the motion of Baldwin-Unit-
ed Corporation and D.H. Baldwin Co. (col-
lectively "debtors" hereinafter) for injunc-
tive and declaratory relief under 11 U.S.C.
§§ 105, 362 (Supp. II 1985). The appellants

herein include Paine Webber, Inc., Rotan Mosle, Inc., Edward D. Jones & Co., Stifel, Nicolaus & Co., Inc., W.H. Newbold's Sons & Co., Inc., Piper, Jaffray and Hopwood, Inc., J.C. Bradford & Co., and Planco, Inc. (collectively "brokers" hereinafter). The appeal is now before this Court on briefs and reply briefs from appellants and appellees (docs. 5, 6, 9, 10). A hearing was held September 30, 1985. After careful examination of all the submissions as well as the relevant statutes, legislative history, and case law, we have determined that the order of the bankruptcy judge must be affirmed.

## I. FACTS

Except for Planco, Inc., which is an insurance consulting firm, appellants here are broker-dealers who marketed single premium deferred annuities (SPDAs) for some insurance company subsidiaries of debtors. They are also among the defendants in a multi-district litigation proceeding consolidated before Judge Brieant in the Southern District of New York, *In re Baldwin-United Corporation (Single Premium Deferred Annuities Litigation)*, MDL Nos. 581, M 21–35 (hereinafter "MDL 581").[1] MDL 581 is a class action by about 100,000 purchasers of SPDAs against several broker-dealers alleging violations of federal securities law in connection with the sale of the SPDAs, and seeking recovery of lost interest. The first of the over 100 suits consolidated in MDL 581 was filed three days after debtors' Chapter 11 proceedings began on September 26, 1983.

All of the brokers here (except Rotan Mosle, Inc. and Stifel, Nicolaus & Co., Inc.) filed proofs of claim in debtors' bankruptcy proceeding which is consolidated in the Bankruptcy Court for the Southern District of Ohio. These proofs of claim were filed on or before the bar date of July 24, 1985, and all seek recovery from debtors on theories of indemnity and contribution should the brokers incur any liability in MDL 581 or any similar actions that might be filed in the future.[2]

More than six months after filing their proofs of claim in the bankruptcy proceedings, Paine Webber filed a third-party complaint against debtors in MDL 581. That third-party complaint was substantially the same as the proof of claim filed in bankruptcy court. On March 4, 1985, debtors advised Paine Webber that the third-party complaint was automatically stayed pursuant to 11 U.S.C. § 362 (Supp. II 1985), and further that they intended to seek relief against Paine Webber in the bankruptcy court. Two days later, Paine Webber sought and obtained an *ex parte* order from the MDL 581 district court which restrained debtors from taking any action in the bankruptcy court.

On March 11, 1985, following a brief hearing on the issue, District Judge Brieant held that the § 362 automatic stay did not apply to the brokers' claims, and he enjoined debtors from seeking relief from any other court, including the bankruptcy court, regarding any claims brought in MDL 581. A written order was entered March 26, 1985, confirming this ruling. On appeal, the United States Court of Appeals for the Second Circuit vacated the New York district court's order and injunction, finding that the injunction was a "misuse of its equitable power" because it interfered with debtors' reorganization efforts. *Paine Webber Group, Inc. v. Baldwin-United Corp. (In re Baldwin-United Corp. Litigation)*, 765 F.2d 343, 347 (2d Cir.1985).

On July 2, 1985, just two weeks after the Second Circuit decision, debtors initiated this adversary action, asking the bankrupt-

---

1. Eighteen of the broker-dealers who were defendants in MDL 581 have entered into a settlement agreement with plaintiffs which has been approved. *See In re Baldwin-United Corp. (Single Premium Deferred Annuities Insurance Litigation)*, 607 F.Supp. 1312 (D.C.N.Y.1985).

2. This Court has already held that the allowance or disallowance of those claims as well as their estimation pursuant to 11 U.S.C. § 502 (1982 & Supp.II 1985) is properly before the bankruptcy court and is not subject to mandatory withdrawal to this Court. *In re Baldwin-United Corp.*, 57 B.R. 751 (1985).

cy court to declare that the automatic stay applied to the brokers' third-party complaints in MDL 581.[3] They also sought to enjoin prosecution of those complaints pursuant to 11 U.S.C. § 105(a) (Supp. II 1985). Following an evidentiary hearing on July 22, 1985, Judge Newsome so ruled. That ruling, which was confirmed in a written order dated July 30, 1985, is the order here on appeal. Specifically, appellants challenge the bankruptcy court's holding that the automatic stay provision of § 362 applies to the brokers' claims. Appellants also contend that it was an abuse of the bankruptcy court's discretion to issue a preliminary injunction pursuant to § 105(a), and that it was error for that court to deny their cross-motion to strike debtors' motion for declaratory and injunctive relief. We will examine each issue in turn.

## II.  *The Automatic Stay*

The bankruptcy court held that the automatic stay provision of § 362 governs the third-party complaints filed in MDL 581 against debtors, and that brokers were consequently barred from continuing to pursue those claims. *In re Baldwin-United Corp.*, No. 1-83-02495 (Bankr.S.D.Ohio, July 30, 1985) (order enforcing automatic stay and issuing preliminary injunction). Although the bankruptcy court's findings of fact cannot be set aside unless clearly erroneous, its conclusions of law are subject to *de novo* review. Bankr.R. 8013; *see also In re R.N. Salem Corp.*, 29 B.R. 424, 428 (S.D.Ohio 1983). It is therefore our task to review the law as applied to the facts before us.

Section 362 of the Bankruptcy Code provides, in part, that filing a petition in bankruptcy operates as a stay of:

> the commencement or continuation ... of a judicial ... proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1) (1982). The issue presented to this Court on appeal is whether the brokers' third-party complaints in MDL 581 are within this definition and consequently must be stayed.

Debtors contend that the third-party complaints should be stayed either because they are "judicial proceedings" that "could have been commenced" pre-petition, or because they are claims that "arose" pre-petition. The brokers, not surprisingly, dispute this, arguing that their claims are not within any permissible construction of § 362. We find that the claims are within the plain language and the intent of § 362, and we therefore affirm the bankruptcy court's decision that action on these claims must be stayed.

■  The § 362 automatic stay was intended to be, and is, "undeniably broad." *Harsh Investment Corp. v. Bialac (In re Bialac)*, 712 F.2d 426, 431 (9th Cir.1983). The purpose of the stay was to provide the debtor with a much needed "breathing spell from his creditors," and to enable the debtor to formulate a plan for reorganization or liquidation that would treat all creditors equally. H.R.Rep. No. 595, 95th Cong., 2d

**3.** On March 14, 1985 debtors had initiated an adversary proceeding in the bankruptcy court seeking declaratory and injunctive relief against the filing by any other creditors of third-party complaints in violation of the automatic stay. They named 129 defendants who were creditors or other claimants who had filed proofs of claim in the bankruptcy case. After a hearing at which Paine Webber appeared, Judge Newsome held that the automatic stay did reach claims for contribution and indemnity such as those filed by Paine Webber. *Baldwin-United Corp. v. Named Defendants (In re Baldwin-United Corp.)*, 48 Bankr. 901, 905 (Bankr.S.D.Ohio

1985). Because the stay was then in force in MDL 581, however, Newsome's order that the named defendants were "stayed from commencing or continuing any third-party suit or proceeding against the Debtors for contribution or indemnity without first seeking a determination from this Court as to the applicability of the automatic stay imposed by 11 U.S.C. § 362," did not apply to parties in MDL 581. *Id.* Therefore the adversary action initiated by debtors in July 1985 was necessary to extend the scope of the *Named Defendants'* holding to the MDL 581 defendants.

Sess. 340, *reprinted in* 1978 *U.S.Code Cong. & Ad.News* 5787, 6296–97; S.Rep. No. 989, 95th Cong., 2d Sess. 54, *reprinted in* 1978 *U.S.Code Cong. & Ad.News* 5787, 5840–41. In keeping with this congressional goal, we deem it appropriate to interpret the language of the statute broadly. We will therefore examine the language cited by the debtors to determine whether the MDL 581 third-party claims are within the legitimate meaning of those words.

In order to determine if these are claims that arose pre-petition we must look first to the bankruptcy code's definition of a claim. A claim is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(4)(A)(1982). The legislative history of this definition suggests that Congress did not intend to equate a bankruptcy claim with an accrued cause of action. Although one draft formulation of the definition of claim did seem to require an accrued cause of action, that version was never enacted.[4] Instead, this broadest possible definition "contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case." H.R.Rep. at 309, *reprinted in* 1978 *U.S.Code Cong. & Ad.News* 5963, 6266; S.Rep. No. 989 at 22, *reprinted in* 1978 *U.S.Code Cong. & Ad.News* 5787, 5808.

■ In view of this virtually all-encompassing definition of a claim, almost any set of facts that creates legal rights or liabilities may constitute the basis for a claim. Moreover, that claim may be said to have arisen whenever the facts or relationships creating the legal rights originate or come into being. Thus, the clear and unambiguous language of § 362 requires that a set of facts that has come about pre-petition creating a legal relationship is a claim

that must be stayed unless it is expressly excepted in § 362(b).

■ This plain meaning interpretation of the language of the automatic stay is further bolstered by the fact that the statute provides that the stay will apply to judicial proceedings already under way or capable of being instituted pre-petition, as well as actions based on claims that arose pre-petition. We think that the obvious purpose of these two separate provisions is to cover both those claims based upon fully accrued pre-petition causes of action and those claims based on prepetition facts or relationships which may still be contingent or unmatured.

Our interpretation of the scope of the automatic stay is at odds with that expressed by the United States Court of Appeals for the Third Circuit in *Avellino & Bienes v. M. Frenville Co. (In re M. Frenville Co., Inc.)*, 744 F.2d 332 (3d Cir.1984), *cert. denied, sub nom. M. Frenville Co., Inc. v. Avellino & Bienes,* — U.S. —, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985). In that case the Third Circuit held that the automatic stay did not apply when pre-petition acts of the debtors formed the basis of the suit, but the actual cause of action stemming from those acts arose post-petition. 744 F.2d at 335. According to that court, "[p]re-petition acts by a debtor, by themselves, are not sufficient to cause the automatic stay to apply." *Id.* Specifically, with regard to the indemnity or contribution claims in *Frenville* the Third Circuit found:

... A & B had an unmatured, unliquidated, disputed claim when the banks brought suit against it in New York state court. Until the banks instituted suit, however, A & B did not have any claim or cause of action based on indemnity or contribution against the Frenvilles. Since the banks' suit began some four-

---

4. The Commission on the Bankruptcy Laws of the United States, established by Congress in 1970, produced its final report and a draft bill in 1973. *See Report of the Commission on the Bankruptcy Laws of the United States,* H.R.Doc. No. 137, 93d Cong., 1st Sess. (1973). The Com-

mission's draft defined a claim as a "legally enforceable demand for performance of an obligation to pay money." S. 4046, 93d Cong., 2d Sess. § 1–102(7) (1974), *introduced* September 26, 1974, 120 *Cong.Rec.* 32,703 (1974).

teen months after the filing of the Frenvilles' involuntary chapter 7 proceedings, A & B's claims, as well as its cause of action, arose post-petition.

*Id.* at 337.

Despite our respect for the Third Circuit, we cannot agree with their holding in *Frenville.* Instead we concur with the bankruptcy court of this district which asserted that it is important to distinguish between a claim for bankruptcy purposes as defined by § 101(4)(A), and a cause of action for indemnity or contribution under state law. *Baldwin-United Corp. v. Named Defendants (In re Baldwin-United Corp.),* 48 B.R. 901, 903–04 (Bankr.S.D. Ohio 1985). If Congress had wished to restrict its definition of claims to fully accrued causes of action, it clearly could have. Instead, the legislative history strongly suggests that such a route was explicitly rejected in favor of a broader definition that would "permit the broadest possible relief in the bankruptcy court." H.R.Rep. No. 595 at 309, *reprinted in* 1978 *U.S.Code Cong. & Ad.News* at 6266; S.Rep. No. 989 at 22, *reprinted in* 1978 *U.S.Code Cong. & Ad.News* at 5808.

We in the Southern District of Ohio are not alone in questioning the correctness of the *Frenville* holding. The United States Court of Appeals for the Second Circuit has also noted:

> We are not as certain as the District Court [for the Southern District of New York] that, if we reached the issue, we would follow *Frenville* and hold the stay inapplicable to Paine Webber's third-party complaint. The broad definition of "claim" in the Bankruptcy Code, ..., creates a substantial question whether the stay applies to the third-party complaint.

*Paine Webber Group, Inc. v. Baldwin-United Corp. (In re Baldwin-United Corp. Litigation),* 765 F.2d 343, 348 n. 4 (2d Cir.1985).

■ Even if *Frenville's* interpretation of the law is correct, we find that it is not controlling here because the cases are distinguishable. The *Frenville* case involved a Chapter 7 liquidation while the instant case concerns a Chapter 11 reorganization. The brokers' contentions notwithstanding, this distinction is important. In a Chapter 7 proceeding, a debtor is discharged "from all debts that arose before the date of the order for relief [the petition] under this chapter." 11 U.S.C. § 727(B) (1982). In the *Frenville* case, therefore, the debtor would not be able to discharge the post-petition claims in any event, so there was "no compelling reason to stay judicial proceedings predicated on such claims." 744 F.2d at 338. The confirmation of a Chapter 11 plan, however, "discharges the debtor from any debt that arose before the date of such confirmation." 11 U.S.C. § 1141(d)(1)(A) (1982). This means that if the post-petition complaints are not resolved prior to confirmation of a debtor's plan of reorganization the debtor could continue to be liable for damages, undermining the feasibility of the reorganization plan. For that reason a bankruptcy court must disallow, liquidate or estimate all outstanding contingent and unliquidated claims prior to confirmation of a reorganization plan. *See, e.g., In re Planes, Inc.,* 48 B.R. 698, 703 (Bankr.N.D. Ga.1985); *In re Pizza of Hawaii, Inc.,* 40 B.R. 1014, 1017 (D.Hawaii 1984). Therefore it is crucial that all such claims be dealt with expeditiously to accomplish a Chapter 11 reorganization. In the present case the litigation of these claims in MDL 581 would disastrously delay or undermine debtors' reorganization. Such a result was clearly not Congress's intent. We therefore conclude that even if *Frenville* is correct, it is not applicable to Chapter 11 proceedings.

■ We also think it significant that the action sought to be stayed in *Frenville* was not brought until over fourteen months after Frenville's Chapter 7 proceedings were instituted. 744 F.2d at 337. In the present case, however, the suit sought to be stayed was filed only three days after debtors' Chapter 11 proceedings began and they could just as easily have been brought pre-petition. Thus the third-party claims are a part of judicial proceedings that "could have been commenced" pre-petition,

unlike those in *Frenville*. The MDL 581 claims against the brokers and the brokers' third-party claims against debtors all arise from SPDA sales and surrounding circumstances, all of which took place pre-petition. All marketing and sales of SPDAs was suspended when the Baldwin subsidiaries were placed in rehabilitation more than two months before debtors' petitions were filed.

There is no question but that the automatic stay applies to the claims by the SPDA policy-holders against debtors. Clearly they could have commenced an action against debtors pre-petition because the rights and liabilities of debtors with respect to the policy-holders were clearly established at that time. Without question, their claims arose pre-petition. Similarly, the SPDA policyholders could also have sued the brokers pre-petition for the same claims that were asserted in their MDL 581 complaints, and the brokers could have sued debtors. Given the close temporal proximity of the filing of the Chapter 11 proceeding and the first of the MDL 581 complaints, we have no difficulty concluding that the third-party complaint against debtors in MDL 581 are part of a judicial proceeding that could have been commenced pre-petition. Moreover, we have already concluded above that the third-party complaints are claims that arose pre-petition. For both of these reasons, we find that the third-party complaints are within the scope of the § 362 automatic stay.

### III. *Injunctive Relief*

■ Section 105(a) of the bankruptcy code empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the bankruptcy code. 11 U.S.C. § 105(a) (Supp. II 1985). Under § 105 the bankruptcy court's authority to grant injunctive relief "to assure the orderly conduct of the reorganization proceedings" is even broader than its power under the automatic stay provisions of § 362. *Paine Webber Group, Inc. v. Baldwin-United Corp. (In re Baldwin-United Corp. Litigation)*, 765 F.2d 343, 346 (2d

Cir.1985). It is clear, for example, that a bankruptcy court may enjoin litigation in other forums if it determines that it would distract the debtors from concentrating on and effecting their reorganization plan. *See, e.g., Johns-Manville Corp. v. Asbestos Litigation Group (In re Johns-Manville Corp.)*, 26 B.R. 420, 428–30 (Bankr.S.D.N.Y.1983), *aff'd*, 40 B.R. 219 (S.D.N.Y.1984); *Otero Mills, Inc. v. Security Bank & Trust (In re Otero Mills, Inc.)*, 21 B.R. 777 (Bankr.D.N.M.), *aff'd*, 25 B.R. 1018 (D.N.M. 1982); *Theobald Industries, Inc. v. International Chemical Workers Union Local 786 (In re Theobald Industries, Inc.)*, 16 B.R. 537, 539–40 (Bankr.D.N.J.1981).

■ The traditional standards governing preliminary injunctions under Federal Rule of Civil Procedure 65 are applicable for a § 105 injunction. The Sixth Circuit has specified four factors which are particularly important in determining whether a preliminary injunction is proper: "(1) the likelihood of plaintiff's success on the merits; (2) whether the injunction will save the plaintiff from irreparable injury; (3) whether the injunction would harm others; and (4) whether the public interest would be served by the injunction." *Unsecured Creditors' Committee of DeLorean Motor Co. v. DeLorean (In re DeLorean Motor Co.)*, 755 F.2d 1223, 1228 (6th Cir.1985). These four factors are to be balanced; they are "not prerequisites that must be met." *Id.* at 1229. Nor is any single factor "determinative as to the appropriateness of equitable relief." *Metropolitan Detroit Plumbing & Mechanical Contractors Ass'n v. Department of HEW*, 418 F.Supp. 585, 586 (E.D.Mich.1976), quoted with approval in *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 537–38 (6th Cir.1978), *cert. dismissed*, 442 U.S. 925, 99 S.Ct. 2852, 61 L.Ed.2d 292 (1979). These elements were originally devised for situations involving stays of administrative orders, however, and they usually require some adaptation to other types of contexts. C. Wright & A. Miller, 11 *Federal Practice & Procedure: Civil* § 2948 at 430 (1973).

In the appeal now before us, the bankruptcy court found that all four elements were present, and a preliminary injunction was consequently ordered. Appellant brokers challenge this decision, contending that debtors failed to establish *any* of the required elements. This Court's duty is to determine whether the bankruptcy court abused its discretion when it considered these elements and concluded that an injunction was proper. *DeLorean,* 755 F.2d at 1228. For the reasons set forth below, we find that the bankruptcy ruling did not constitute an abuse of discretion and we therefore affirm the decision.

A. *Likelihood of Success on the Merits*

The "purpose of a preliminary injunction is to preserve the existing state of things until the rights of the parties can be fairly and fully investigated." *Blount v. Societe Anonyme du Filtre Chamberland Systeme Pasteur,* 53 F. 98, 101 (6th Cir.1892). In many instances success on the merits means simply that the party seeking the preliminary injunction will ultimately be successful in obtaining a permanent injunction. If, however, the injunction is sought to permit time for an appeal to be heard, or for final adjudication of the parties' rights in another forum, the requirement may be taken to mean the probability of the movant prevailing on appeal or in the prospective litigation. In the context of a bankruptcy proceeding some courts have concluded that "success on the merits" means "the probability of a successful plan or reorganization." *Otero Mills, Inc. v. Security Bank & Trust (In re Otero Mills),* 21 B.R. 777, 779 (Bankr.D.N.M.), *aff'd,* 25 Bankr. 1018, (D.N.M.1982). *See also, Landmark Air Fund II v. BancOhio National Bank (In re Landmark Air Fund II),* 19 B.R. 556, 560 (Bankr.N.D.Ohio 1982);

*In re Larmar Estates, Inc.,* 5 B.R. 328, 331 (Bankr.E.D.N.Y.1980).[5] Thus the injunction would "preserve the existing state of things" if there is a likelihood of the reorganization succeeding.

■ Granting injunctive relief in such a situation is in keeping with the overall purpose of the bankruptcy code to permit the debtor a breathing space during which time he can take stock and formulate a plan without the distraction of other actions. This is particularly significant in light of the fact that the preliminary injunction here would only last until January 15, 1986, by which time the reorganization could be accomplished. Since the bankruptcy court has the specific mandate to use its equitable powers to "assure the orderly conduct of the reorganization proceedings," it follows that the likelihood of those proceedings resulting in a successful reorganization is an important consideration in determining the appropriateness of a preliminary injunction. We therefore conclude that the probability of the debtor effecting a successful plan of reorganization may be a proper way for determining the likelihood of success on the merits for the purposes of issuing a § 105 injunction. This is the Bankruptcy Court's construction of this requirement and we find that it was not an abuse of discretion to use it in this situation.

■ Moreover, Judge Newsome is uniquely qualified to determine the likelihood of a successful reorganization because he has presided over Baldwin's reorganization for two years. We find no basis for disagreeing with the view he expressed at the hearing on this injunction that Baldwin's reorganization was a "difficult but ... doable" job. Transcript of Proceedings Held July 22, 1985 at 95 *In re Baldwin-*

---

5. The broker-appellants in this case assert that most courts have not adopted this "bizarre interpretation of the test" (doc. 10, at 15). After reading the cases cited by the brokers, however, we conclude that those cases do not actually reject the construction set forth above. Instead they merely apply the traditional test without discussion. This approach is appropriate on the facts of those particular cases, but is not neces-

sarily suitable for all applications for injunctive relief under 11 U.S.C. § 105(a). *See, e.g., J & L Transport, Inc. v. Canal Insurance Co. (In re J & L Transport, Inc.),* 47 B.R. 51, 53 (Bankr.W.D. Wis.1985); *In re Trails End Lodge, Inc.,* 45 B.R. 597, 602 (Bankr.D.Vt.1984); *Cournoyer v. Town of Lincoln (In re Cournoyer),* 43 B.R. 354, 360–61 (Bankr.D.R.I.1984).

*United Corp.*, No. 1–83–02495 (Bankr.S.D. Ohio) (hereinafter "Transcript"). At the time of the hearing on this motion, Baldwin had already achieved a settlement with its largest creditor and set a January 15, 1986 deadline for a confirmed plan. Since Judge Newsome's hearing there has been further substantial progress: Baldwin has submitted its plan of reorganization and the debtors' disclosure statement has been approved by the bankruptcy court. Thus there is ample support for Judge Newsome's conclusion that there was a substantial likelihood of a successful reorganization and that it could be effected "in the near future." Transcript at 97.

#### B. *Irreparable Injury*

■ Perhaps the most important of the elements that must be established for injunctive relief is that the applicant will suffer irreparable harm prior to a decision on the merits. In a bankruptcy context, irreparable harm may be discerned if "the action sought to be enjoined would so consume the time, energy and resources of the debtor that it would substantially hinder the debtor's reorganization effort." *In re Anje Jewelry Co., Inc.*, 47 B.R. 485, 487 (E.D.N.Y.1983). *See also Johns-Manville Corp. v. Asbestos Litigation Group (In re Johns-Manville Corp.)*, 26 B.R. 420 (Bankr. S.D.N.Y.1983), *aff'd*, 40 B.R. 219 (S.D.N.Y. 1984). In the present case, Judge Newsome found that there was a reasonable likelihood that debtors would suffer irreparable harm by being required to defend themselves against third-party claims in MDL 581 while they are also trying to meet their January 15, 1986 deadline for confirmation of their reorganization plan. Transcript at 94–95.

■ If debtors must litigate in MDL 581 prior to finalizing their reorganization plans, it would make it impossible for them to meet the January 15, 1986 deadline required in the settlement agreement with the rehabilitators. This in turn would undoubtedly terminate the settlement and harm the bankruptcy estate because it would be deprived of substantial assets around which it could reorganize. The end result could very well be that Baldwin would be forced into liquidation. In addition, litigation in MDL 581 would deplete the estate's assets further because of increased attorneys' fees.

Brokers contend that there is absolutely no possibility of harm to debtors because Judge Newsome had already held that the § 362 automatic stay was applicable to the brokers' third-party claims, and Judge Brieant, who is presiding over MDL 581, also has imposed a stay. Consequently, brokers argue that there was no impending or threatened injury possible. In fact, the brokers argue that they "pose no immediate danger to Debtors or their reorganization through further litigation in MDL No. 581" (doc. 10 at 14). We disagree.

Brokers' argument that "[t]here is nothing in the record to suggest the existence of a [sic] immediate threat that Judge Brieant will lift the stay in MDL 581 or that Claimants will even seek to have such stay lifted," (doc. 5 at 27), is disingenuous. Given their past record of seeking various avenues for litigating their claims against debtors, including the *ex parte* proceeding described above, there is little reason to credit their assertion that they will not do so again if given the chance. Indeed, the Supreme Court has stated that lower courts should "beware of efforts to defeat injunctive relief by protestations of repentance and reform." *United States v. Oregon State Medical Society*, 343 U.S. 326, 333, 72 S.Ct. 690, 696, 96 L.Ed. 978 (1952). This warning is particularly pertinent in this case since we are currently faced with an attempt by the brokers to reverse Judge Newsome's holding that the § 362 stay applies to their claims. Although we have determined that the stay does apply, we do not think that necessarily protects debtors from irreparable harm. Success on appeal of the automatic stay question could open the way for the brokers to request that the stay in MDL 581 be lifted, a request that might well be granted in light of Judge Brieant's previous ruling that the stay did not apply to those claims. Moreover, we

cannot see what possible goal brokers could have in mind for challenging the § 105 injunction other than to aid in clearing the path for litigation of their claims in MDL 581.

For all of these reasons, we therefore find that it was not an abuse of discretion for Judge Newsome to find that there was a likelihood of irreparable harm to debtors if the injunction were not ordered. .

## C. *Absence of Harm to the Brokers*

The potential harm to the debtors must be balanced against any potential harm to the brokers. The brokers contend that, to the extent that they will require discovery from debtors in order to defend themselves in MDL 581, they will be harmed. There is a particular likelihood of such harm, they assert, because of the long duration of the injunction, from July to mid-January. Moreover, the brokers argue that by the time the injunction is lifted their claims against Baldwin will have been determined in the bankruptcy proceedings, effectively preventing them from ever liquidating their claims against Baldwin (doc. 5, at 29).

The brokers' arguments are without merit. First, the brokers' inability to seek discovery from debtors for purposes of MDL 581 is not a result solely of this injunction. Even if this injunction were lifted, Judge Brieant's stay would also prohibit them from taking discovery from debtors. *Paine Webber Group v. Baldwin-United Corp. (In re Baldwin-United Corp. Litigation)*, 765 F.2d 343, 346 (2d Cir.1985). Furthermore, the progress of MDL 581 is such that it is unlikely that any discovery on the merits of the issues will be underway prior to January 15, 1985 even if there were no injunction.

Second, the injunction is not so far-reaching that it will prevent brokers from ever liquidating their claims against debtors. It is true that the bankruptcy court is now in the process of determining whether to allow the brokers' claims pursuant to § 502, and if allowed, to estimate them pursuant to § 502(c). But those proceedings are merely for bankruptcy court purposes and do not represent any final determination of liability between the parties. After January 15, 1986, the brokers will have the opportunity to litigate their claims in MDL 581 and, if successful, they will be able to collect against the amount estimated by the bankruptcy court.

Therefore, we concur with Judge Newsome that the brokers will face no significant harm during the period of the preliminary injunction, and whatever minor harm might befall them is far outweighed by the harm to the debtors if the injunction were lifted.

## D. *Public Interest*

Baldwin's reorganization has repeatedly been characterized as one of the biggest in American history. *See, e.g., Stoller v. Baldwin-United Corp.*, 41 B.R. 884, 885–86 (S.D.Ohio 1984). Over 8,000 claims have been filed representing well over 100,000 people and entities who have interests in the outcome of the reorganization. It is beyond argument that Judge Newsome was correct in stating, "[i]f there were ever a case ... in which the public has an interest in having a debtor reorganize for the benefit of its creditors and its shareholders, this is certainly it." Transcript at 98–99. We believe this is beyond question; there is simply no need to discuss this point further.

### Conclusion

█ It is not necessary that we find that all four of the above requirements were met in order to conclude that it was not an abuse of discretion for Judge Newsome to issue the injunction. Nonetheless, we do find that all of the requirements were met. We therefore have no difficulty in affirming his issuance of the preliminary injunction.

## IV. *Procedural Irregularities*

Brokers contend that Judge Newsome's denial of their cross-motion to strike the debtors' motion for declaratory and injunctive relief was reversible error. According to the brokers, the debtors' motion was equivalent to a motion for summary judg-

ment because it sought final judgment for declaratory relief as to the applicability of the stay (doc. 5, at 31). As such, brokers argue that Bankruptcy Rule 7056 mandates the application of Federal Rule of Civil Procedure 56(a) which requires a twenty day waiting period from the filing of the complaint. Because the so-called "motion for summary judgment for declaratory relief" was not timely, the brokers now seek to have this Court remand this matter to the bankruptcy court so that the motion may be timely filed.

Although we decline to characterize the brokers' argument as, in Judge Newsome's words, mere "procedural gobbledygook," we do find it to be without merit. Debtors neither sought nor obtained summary judgment. Rather the debtors properly sought a preliminary injunction and declaratory relief.

Regarding the injunctive relief requested pursuant to § 105, Bankruptcy Rule 7065 provides that Federal Rule of Civil Procedure 65(a)(2) is applicable. Rule 65(a)(2) contains no requirements concerning when a motion for preliminary injunction can be heard. Moreover, even if Judge Newsome did grant declaratory relief, it was appropriate because Rule 65(a)(2) provides that the trial of an action on the merits may be "advanced and consolidated" with a hearing of an application for a preliminary injunction. Debtors clearly were permitted to seek a preliminary injunction at the same time that they filed their complaint. C. Wright & A. Miller, 11 *Federal Practice & Procedure: Civil* § 2949 at 468 (1973). Thus, the only requirement as to when the consolidated hearing could be held was that the defendants must have adequate notice of the hearing. In this case defendants had approximately twenty days, which we deem to be sufficient given the surrounding circumstances.

We further find that a consolidated hearing was proper in this case. The complaint and the preliminary injunction sought identical relief, and the issues could be examined completely without lengthy pretrial proceedings. Furthermore, the consolidation did not prejudice any party by impairing its ability to present all its evidence. *Fenstermacher v. Philadelphia National Bank,* 493 F.2d 333, 337 (3d Cir. 1974); *Cooper v. Wisdom,* 440 F.Supp. 1027, 1029 (S.D.Fla.1977).

There is no reasonable possibility that brokers could have been surprised or prejudiced by the consolidated hearing in this case. The exact issues involved in this proceeding had already been fully briefed and argued on three separate occasions just a few months previously: in the Southern District of New York in MDL 581, on appeal to the Second Circuit, and in this district's bankruptcy court in *Named Defendants.* In fact the only reason this injunctive proceeding was necessary at all was to extend the *Named Defendants* ruling to the activities of the brokers who had been protected by the MDL 581 injunction prior to its vacation on appeal. *See* note 2 above.

Thus we conclude that there was no procedural irregularity in the bankruptcy court which requires remand.

## ORDER

For the reasons fully discussed above, we find that all of appellants' arguments on appeal are without merit and that the order appealed from is hereby affirmed.

SO ORDERED.