FLETCHER, Circuit Judge,
Dissenting:
The majority frames the question before us as “whether the California state courts' had jurisdiction to determine if the state criminal proceedings against Gruntz were excluded from the automatic stay in bankruptcy.” Majority Opinion at 1023-24. I see the issue differently. For me, the question is whether a state may prosecute individuals in its state courts for conduct that is criminal under state law, without first obtaining permission from the federal bankruptcy courts. Because I think it beyond cavil that this question must be answered in the affirmative, I respectfully dissent and would affirm the district court.
I.
The bankrupt, Gruntz, was convicted in Los Angeles County Municipal Court for failing to make child support payments, a crime under state law. The California Court of Appeal affirmed the conviction. The prosecution and conviction were indisputably within the normal criminal jurisdiction of the state courts. In the course of hearing the case, the municipal court determined that the automatic stay issued by a federal bankruptcy court pursuant to the defendant’s ongoing Chapter 11 bankruptcy proceeding did not apply to the criminal proceeding in state court. See 11 U.S.C. § 362(a)(1).
While I agree with the municipal court’s conclusion that the automatic stay did not apply to the case before it, that is not the source of my dissent. Rather, I dissent because I believe the Municipal Court had jurisdiction to decide whether the action before it was subject to the stay, and because I think we may not now entertain a collateral attack on that judgment. See Durfee v. Duke, 376 U.S. 106, 111, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963) (holding that “a judgment is entitled to full faith and credit — even.as to questions of jurisdiction — when the second court’s inquiry discloses that those questions have been fully and fairly litigated and fairly decided in the court which rendered the original judgment”); Rooker v. Fidelity Trust, 263 U.S. 413, 416-16, 44 S.Ct. 149, 68 L.Ed. 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 486-87, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) (holding that the lower federal courts lack jurisdiction to consider claims that are “inextricably intertwined” with the final judgment of a state court).
The majority holds, however, that the Rooker-Feldman doctrine and general rules of preclusion do not apply here because state courts are simply without jurisdiction to determine the scope of bankruptcy’s automatic stay provision. This conclusion is the product of a legal and logical non sequitur. The majority is of course correct to note that Congress has granted original and exclusive jurisdiction to the district courts for all cases in bankruptcy under title 11. See Majority Opinion at 1024 (citing 28 U.S.C. § 1334(a)). I also agree with the judgment expressed in the legislative history that “[t]he automatic stay is one of the fundamental debtor protections provided in the bankruptcy laws.” H.R.Rep. No. 96-595, 95th Corig., 1st Sess. 340 (1977), reprinted in 1978 U.S.Code Cong. & Admin. News 5963, 6296. I do not concur, however, in the majority’s conclusion that the *1030 importance of the automatic stay somehow precludes state courts from determining whether suits otherwise under their jurisdiction fall within one of the federal statutory exceptions to the automatic stay. It simply does not follow from the exclusivity of federal bankruptcy jurisdiction that only the federal bankruptcy courts can determine the applicability of the automatic Stay.
II.
According to the majority, “[i]f allowed to stand, the decision of the California state courts would ‘substantially infringe the authority’ of the bankruptcy court.” Majority Opinion at 1025-26 (quoting Restatement (Second) of Judgments § 12(2)). Not so. Other Circuits have recognized that courts other than the bankruptcy court can determine the applicability of the automatic stay without jeopardizing the authority or effectiveness of the bankruptcy courts. See, e.g., In re Baldwin-United Corp. Litigation, 765 F.2d 343 (2d Cir.1985); In re Taylor, 216 B.R. 366 (Bankr.S.D.N.Y.1998); In re Bona, 124 B.R. 11 (S.D.N.Y.1991); In re Mann, 88 B.R. 427 (Bankr.S.D.Fla.1988).
In In re Baldwin-United Corp. Litigation, 765 F.2d 343 (2d Cir.1985), the Second Circuit held that “[t]he court in which the litigation claimed to be stayed is pending has jurisdiction to determine not only its own jurisdiction but also the more precise question whether the proceeding pending before it is subject to the automatic stay.” Id. at 347. This rule applies with full force to the case before us, and I would adopt it. See In re Taylor, 216 B.R. at 369 (“[Questions about whether the Automatic Stay stays an aetion or proceeding can be resolved either in the Bankruptcy Court or the state court where the case is pending. State courts retain jurisdiction to decide whether they have jurisdiction.”). The majority finds Baldwin inapposite because in that case a federal district court, not a state court, determined whether the automatic stay applied to the action before it. The majority is right about the distinction, but we differ as to its significance.
Underlying the majority’s opinion is the notion that if the bankruptcy courts are deprived of exclusive authority to determine the applicability of automatic stays, bankruptcy proceedings will be frustrated by other proceedings before other courts. This argument focuses on the need for exclusive jurisdiction in the bankruptcy courts, not in the federal courts in general. The rationale is simple: in order to administer bankruptcy estates effectively, bankruptcy courts must have the sole power to determine which matters fall under its statutory mandate. Otherwise, the majority implies, debtor reorganizations may be undermined by concurrent proceedings in other courts over which the bankruptcy courts have no control. For this view to have any merit, it must require that all non-bankruptcy courts abstain from interpreting the applicability of automatic stays. In this sense, the fact that Baldwin involved a federal district court determining the automatic stay’s applicability does not meaningfully distinguish it from the case at bar. If the state proceeding in this case threatened the authority of the bankruptcy court, then by the same logic so did the proceeding in the federal district court in Baldwin. Experience shows, however, that Baldwin poses no threat to the integrity of bankruptcy proceedings.
Baldwin was decided by the Second Circuit in 1985. Since then, the bankruptcy courts in that jurisdiction give no indication of having been hamstrung by Baldwin. In fact, the Southern District of New York continues to be recognized as “the leading jurisdiction for the filing of ‘mega-cases’” in bankruptcy. C.R. Bowles & John Egan, The Sale of the Century or a Fraud on Creditors?: The Fiduciary Duty of Trustees and Debtors in Possession Relating to the ‘Sale’ of a Debtor’s Assets in Bankruptcy, 28 U. Mem. L.Rev. 781, 810 & n. 154 (1998) (defining “mega-cases” as cases involving debtors with assets of at least $100 million). In short, the concerns animating the majority’s position have simply not been borne out by experience in the wake of Baldwin. There is no reason to believe that deferring to the municipal court’s judgment in this case will produce any more worrisome results.
*1031 III.
The majority’s holding, in contrast, may have serious consequences. The majority holds that “the state court did not have jurisdiction to decide the reach of the automatic stay.” Majority Opinion at 1026. Without regard to whether the state court decided that the automatic stay actually applied or not, the majority concludes that the “state court decision is void ab initio.” Id. Elsewhere in the opinion, the majority re-characterizes its holding as concluding merely that “we may review Gruntz’s state court convictions to determine whether they are void due to the state courts’ lack of jurisdiction to decide whether the automatic stay precluded Gruntz’s prosecution.” Id. at 1026-27. This re-characterization seems to imply that the majority would leave Gruntz’s conviction untouched if it found that the municipal court was right in concluding that the prosecution was not subject to the automatic stay. Under the logic of the rest of the majority’s opinion, however, this cannot be so.
To find, as the majority does, that the state court proceeding was void ab initio for lack of jurisdiction is to conclude that the proceeding was void “[f]rom the beginning; from the first act; from the inception.” Black’s Law Dictionary 6 (6th ed.1979). If the proceeding was void in that sense, the conviction cannot stand. It matters not whether the state court was correct in its determination that the automatic stay did not apply to the prosecution. The state court was simply without jurisdiction to make that decision. Whether the state court was correct or not cannot affect the validity of a proceeding that was void from the start. Thus, by the majority’s logic Gruntz’s conviction must be vacated regardless of whether the state court correctly interpreted the scope of the stay.
The consequences for future state court cases are even more drastic. If, as the majority maintains, state courts are without jurisdiction to determine whether cases before them fall under a bankruptcy court’s automatic stay, then this is not a jurisdictional issue that can be waived if not raised by the parties. It is a question that must be answered at the outset of every case, just as subject matter jurisdiction must be ascertained in the federal courts before proceeding. According to the majority, however, the state courts are precluded from answering the question themselves. What, then, would the majority have state courts do? Must all state cases now begin with the court seeking certification from a bankruptcy court that it is okay to proceed? After all, if state courts are without jurisdiction to determine whether automatic stays apply to the cases before them, they are also presumably unable even to determine if a relevant bankruptcy proceeding exists anywhere in the country. Even in obvious eases — homicide prosecutions, for example — state courts are presumably precluded, if called upon, from making the easy determination that no bankruptcy proceeding bars going forward with the prosecution.
The way out of this quagmire is clear: recognize that state courts have jurisdiction to determine their own jurisdiction. See In re Taylor, 216 B.R. at 369 (“State courts retain jurisdiction to decide whether they have jurisdiction”) (citing In re Baldwin, 766 F.2d at 347).
IV.
The automatic stay is a creature of federal statute, and exists to effectuate exclusive federal jurisdiction over bankruptcy proceedings. But to say that only federal bankruptcy courts are competent to determine the applicability of the stay is to suggest that state courts have no role in interpreting federal law. Just the opposite is the case. This country was founded in part on the principle that the states would be “constituent and essential parts of the federal government.” The Federalist No. 46 (James Madison). As part of that plan, the Constitution requires that state courts, no less than their federal counterparts, faithfully interpret and apply “the Laws of the United States which shall be made in Pursuance [of the Constitution].” U.S. Const. art. VI (noting that the “Judges of every State shall be bound [by the laws and Constitution of the United States], any Thing in the Constitution or Laws of the State to the Contrary notwithstanding.”). It is in part because of this requirement that *1032 Alexander Hamilton could confidently conclude that “the State courts would have a concurrent jurisdiction in all cases arising under the laws of the Union where it was not expressly prohibited.” The Federalist No. 82 (Alexander Hamilton).
This is not a case where state court jurisdiction over the relevant issue is expressly prohibited. Although bankruptcy proceedings themselves are exclusively federal, jurisdiction to determine the scope of the automatic stay is not committed solely to the federal bankruptcy courts. The majority offers no convincing rationale for why state courts should not therefore exercise jurisdiction. Conversely, precluding state courts from determining the automatic stay’s applicability risks compromising the daily workings of those courts. Because I would allow the state courts to adjudicate cases under their criminal laws without first obtaining the permission of federal bankruptcy judges, I respectfully dissent from the majority’s opinion.