**In re N–REN CORPORATION, Debtor.**

**N–REN CORPORATION, Plaintiff,**

**v.**

**MAPCO FERTILIZER, INC., Defendant.**

**Bankruptcy No. 1–86–00144.**
**Adv. No. 1–86–0203.**

United States Bankruptcy Court,
S.D. Ohio, W.D.

Sept. 10, 1986.

Timothy J. Hurley, Jeffrey Marks, Cincinatti, Ohio, for N–Ren.

N. Richard Elliott, Galena, Ill., Robert A. Goering, Wilke & Goering, Cincinnati, Ohio, for Mapco.

I. William Cohen, Hertzberg, Jacob & Weingarten, Detroit, Mich., Paul A. Nemann, Cohen, Todd, Kite & Stanford, Cincinnati, Ohio for creditors committee.

## DECISION ON MOTION FOR PRELIMINARY INJUNCTION

BURTON PERLMAN, Bankruptcy Judge.

Plaintiff/debtor filed a complaint in this adversary proceeding in which it seeks injunctive relief against defendant. Bankruptcy Rule 7001(7) requires an adversary proceeding where the relief sought is injunctive. (Because we will be referring herein to several law suits, so that use of the terms "plaintiff" and "defendant" will lead to confusion, hereafter we will refer to plaintiff and defendant in the instant proceeding as "debtor" and "Mapco".)

The present complaint simply states that Mapco has filed an action in the state court of Illinois against N–Ren Illinois, Inc., and that continuance of that action "will result in immediate and irreparable injury, loss and damage to N–Ren, its estate and its creditors." On the same day that the instant complaint was filed, debtor filed a motion for a temporary restraining order. We held a hearing that day, attended by counsel for both parties, and at the conclusion of the hearing we issued a temporary restraining order. The matter then came on for a hearing on motion for preliminary injunction. No testimony was presented by either party at that time, but rather counsel offered legal arguments based on documentation before the court.

The position of debtor as presented at the hearing essentially is that Mapco had itself filed in this court an adversary proceeding in which both debtor and its wholly-owned subsidiary, N–Ren Illinois, Inc., were named as defendants. The complaint

in that adversary proceeding was filed July 8, 1986. It is further part of debtor's position that on or about August 29, 1986, Mapco filed an action against N–Ren Illinois, Inc. in the state court in Illinois in which Mapco seeks to shut down certain facilities which will cause loss to the debtor. Debtor's position seems to be that the issues raised in the adversary proceeding of July 8, 1986 in this court are the same as those in the suit in Illinois and, if this is so, the suit in Illinois should be enjoined. Mapco does not appear to have a different view of the controlling principles here, but disagrees on the question of whether the issues in the adversary proceeding here and those in the Illinois law suit are the same. While we cannot agree that identity or similarity of the pleadings in the two suits can carry the day for debtor on this motion, it is instructive to review the pleadings in the two suits and the documents to which they refer. The complaints in both cases were framed by Mapco, opponent in the present motion.

In Adversary Proceeding No. 1–86–0156, plaintiff is Mapco, while defendants are debtor and N–Ren Illinois, Inc., debtor's wholly-owned subsidiary. The early allegations of the complaint provide background as to the relationship between the parties, viz., that on or about November 30, 1977, Mapco and N–Ren Illinois, Inc. entered into a joint venture agreement pursuant to which they were to manufacture and market urea ammonium nitrate (UAN) and other products; on that date, they also entered into a purchase agreement whereby debtor sold to Mapco some real estate adjacent to other real estate owned by debtor; that debtor constructed a plant on the acquired real estate for Mapco which cost $12.2 million; that in the joint venture agreement, debtor was named manager of the joint venture and again on November 30, 1977, a management agreement was executed between the joint venture and the debtor; and that there was a further agreement on that date between the joint venture and the debtor whereby debtor was to provide certain services and supplies to the joint venture from debtor's facilities.

After the Chapter 11 case was filed January 15, 1986, on February 13, 1986, debtor, N–Ren Illinois, and Mapco entered into a tolling agreement pursuant to which the services and supply agreement, the joint venture agreement, and the management agreement were modified and/or suspended. The joint venture plant was then operated pursuant to the tolling agreement until June 27, 1986, when debtor shut it down. There then follow allegations that debtor is no longer able to perform its duties to the joint venture and Mapco because of its financial difficulties. The next allegation is that debtor has informed Mapco that it intends to undertake major repair and renovation at an expense exceeding one million dollars, without prior approval from the joint venture and in a manner inconsistent with the original 1977 agreements. Mapco further asserts that it believes that the management agreement terminated on the date that the bankruptcy petition was filed by debtor, and also that pursuant to the agreement of the parties, the tolling agreement expired June 30, 1986. Mapco says that it will suffer irreparable damage if debtor incurs expenses for repair or renovation of the plant. Up to paragraph 29 on page 8 of the complaint, the specific allegations go to the turnaround to which Mapco objects.

In the final paragraph of the complaint, paragraph 30, Mapco alleges that debtor is the alter ego of N–Ren Illinois, Inc., is in control of N–Ren Illinois, Inc., and that the latter has defaulted in its obligations under the joint venture agreement in several enumerated respects. The complaint ends with an extended prayer for relief. First, Mapco seeks to enjoin debtor from making repairs or renovations, or incurring further expenses or costs for the joint venture. Next, plaintiff seeks declaratory relief that the joint venture agreement has been breached and is abrogated. The next paragraph seeks similar relief in respect to the management agreement. Finally, Mapco seeks damages against both debtor and N–Ren Illinois, Inc.

In the complaint in the Illinois state court, the plaintiff is Mapco and the sole defendant is N–Ren Illinois, Inc. This complaint also makes reference to the November 30, 1977 joint venture and joint venture agreement, and that the business of the joint venture is the operation of the joint venture plant. The joint venture plant adjoins another plant which is owned by debtor. There is an allegation that debtor was the manager of the joint venture plant. Reference is also made to the service and supply agreement between the joint venture and debtor. There follows an allegation that both plants were shut down on June 27, 1986, and it is further asserted that the reason was the lack of market for the products being produced. It is then alleged that there was a meeting of the joint venture committee on August 8, 1986 to discuss the start-up of the joint venture plant. While the joint venture committee did not act, an officer of N–Ren Illinois and also debtor advised the joint venture committee that start-up was planned the week of August 10. It is then alleged that start-up was unilaterally decided by debtor without the approval of Mapco or the joint venture committee. The final allegation is that Mapco will suffer irreparable damage by the continued operation of the joint venture plant. In its prayer for relief, Mapco seeks injunctive relief against continued operation of the plant, as well as against action by N–Ren Illinois in violation of the joint venture agreement.

What is before us now is the motion of plaintiff/debtor in this adversary proceeding for a preliminary injunction staying Mapco from going forward with the Illinois litigation. It must be borne in mind that this adversary proceeding is based upon a complaint seeking a permanent injunction against Mapco from proceeding further with the aforementioned state court action. The present complaint does not itself make allegations regarding the behavior of the respective parties in connection with the several contracts between them. With that in mind, we refer to the legal standards here applicable, recently restated by Judge Porter in *In re Baldwin-United Corp.*, 57 B.R. 759, 766 (D.C.S.D.Ohio 1985):

The traditional standards governing preliminary injunctions under Federal Rule of Civil Procedure 65 are applicable for a § 105 injunction. The Sixth Circuit has specified four factors which are particularly important in determining whether a preliminary injunction is proper: "(1) the likelihood of plaintiff's success on the merits; (2) whether the injunction will save the plaintiff from irreparable injury; (3) whether the injunction would harm others; and (4) whether the public interest would be served by the injunction." *Unsecured Creditors' Committee of DeLorean Motor Co. v. DeLorean (In re DeLorean Motor Co.)*, 755 F.2d 1223, 1228 (6th Cir.1985). These four factors are to be balanced; they are "not prerequisites that must be met." *Id.* at 1229. Nor is any single factor "determinative as to the appropriateness of equitable relief." *Metropolitan Detroit Plumbing & Mechanical Contractors Ass'n v. Department of HEW*, 418 F.Supp. 585, 586 (E.D.Mich.1976), quoted with approval in *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 537–38 (6th Cir. 1978), cert. dismissed, 442 U.S. 925, 99 S.Ct. 2852, 61 L.Ed.2d 292 (1979). These elements were originally devised for situations involving stays of administrative orders, however, and they usually require some adaptation to other types of contexts. *C. Wright & A. Miller*, 11 *Federal Practice & Procedure: Civil* § 2948 at 430 (1973).

1. Likelihood of success on the merits.

In this adversary proceeding which is brought pursuant to 11 U.S.C. § 105(a), the issue for us is whether the carrying on of the Illinois litigation will result in such harm or interference with the bankruptcy case pending here to warrant the issuance of a specific injunction. 2 Collier on Bankruptcy (15th ed.) ¶ 105.02 at p. 105–6. One court has held that the kind of situation which could warrant the issuance of an injunction against a third party would be where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party

defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994, 999 (4th Cir.1986). Another court enjoined suit against a guarantor of obligations of a debtor when it found that enforcement of the guarantee would frustrate reorganization efforts. *In re Otero Mills, Inc.,* 25 B.R. 1018 (Bankr.D.N.M. 1982). This authority effectively disposes of the contention of Mapco that injunctive relief should be denied because neither party in the state suit is a bankruptcy debtor.

■ Based upon what has been presented to us, we find it likely that plaintiff will succeed in securing a permanent injunction against the conduct of the Illinois litigation. N–Ren Illinois, Inc. is a wholly-owned subsidiary of the debtor in the Chapter 11 case pending here, that of N–Ren Corporation. Every agreement to which Mapco, N–Ren Illinois, Inc., and debtor are signatories, the joint venture agreement, the management agreement, the service and supply agreement, and the tolling agreement, was signed by the same person on behalf of N–Ren Illinois, Inc. and N–Ren Corporation, such signatory in each instance being an officer of both corporations. The tolling agreement under which the joint venture facility was operated by the debtor was presented to this court in debtor's Chapter 11 case and became effective with the agreement of all parties to it upon the entry of an order by this court. Further, we cannot upon this motion for preliminary injunction overlook the allegation by Mapco itself in the adversary proceeding which it brought in this court, where in paragraph 30 it alleges that debtor is the alter ego of N–Ren Illinois, Inc. On the record before us on this motion, we find that debtor and N–Ren Illinois, Inc. are so intertwined in their affairs that debtor is a real party in interest in the Illinois state court litigation. Furthermore, we find that that litigation will impact the reorganization efforts of debtor.

2. Irreparable injury.

■ At p. 768 of the *Baldwin-United* case, *supra,* Judge Porter remarked that:

In a bankruptcy context, irreparable harm may be discerned if "the action sought to be enjoined would so consume the time, energy and resources of the debtor that it would substantially hinder the debtor's reorganization effort."

We find such circumstances present here. While debtor is a substantial business enterprise, its executive cadre is not large. The individual executives who would have to make themselves available to deal with the litigation in Illinois, and that would have to be immediately in view of the motion for a temporary restraining order in Illinois, are the very ones who are most actively involved in negotiating a sale of debtor and/or some or all of its assets at this very time, a process vital to the successful conclusion of this Chapter 11 case.

3. Harm to Mapco.

■ In the papers before us is an affidavit by Dale R. Morris, an officer of Mapco, in which he asserts that Mapco is being injured because it is losing money with the continued operation of the joint venture plant under present economic conditions. The complaint in the Illinois suit characterizes this as irreparable damage. We cannot permit this assertion, however, to weigh heavily against the granting of a preliminary injunction here. It is clear that the operation of the joint venture plant arises out of the contractual relationships which have been depicted above. Any claim on account of this assertion, if true, would arise on a complaint for breach of contract. If Mapco is successful on such a claim, it would be entitled to money damages, relief which, when available, is traditionally held in the law to be inconsistent with the notion of irreparability. Indeed, expediting and re-enforcing efforts to reach a successful conclusion to this Chapter 11 case would be in the best interests of Mapco, for it would maximize the ability of the debtor to respond in damages to any such claim.

4. The public interest.

Unlike the *Baldwin-United* case, *supra,* where claimants were so numerous that it

was possible to say that this, in and of itself, was a basis for a finding of there being a public interest in the granting of the preliminary injunction, the case before us is not of that scope in terms of the number of parties involved. That being the case, we are left to general pronouncements of public policy interests, and it cannot be gain-said that arguments of this character could be marshalled on behalf of both parties. Nevertheless, we are impressed that there is a strong public interest in the success of corporate reorganizations, *United States v. Whiting Pools*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), and in the present instance that public interest coincides with an interest of Mapco, as we have indicated above.

\*　　\*　　\*

■ Judge Porter observed in *Baldwin-United, supra*, at p. 769, that it is not necessary that all four of the stated requirements important to the issuance of a preliminary injunction must be met in order to reach a conclusion in favor of the party seeking the preliminary injunction. In the case before us, we conclude that the preliminary injunction should issue, principally because we believe that plaintiff will succeed in its efforts to secure a permanent injunction, and that the granting of the preliminary injunction will avoid irreparable harm to plaintiff, while like harm to Mapco will not occur.

We append to the foregoing matters of fact and conclusions of law, the following observations. In reaching the conclusions that we do, we are not insensitive to the position of Mapco. We do not believe that Mapco is whimsically pursuing remedies, but rather that it is motivated by business considerations which are of great importance to it. There is, however, no reason why it cannot seek relief in the adversary proceeding already pending here, supplementing the complaint in that adversary proceeding if necessary, pursuant to B.R. 7015. In this forum, it is possible to adjust the conduct of litigation, permitting it to proceed, but not in such manner as to be inconsistent with the important objective of achieving a successful outcome in a Chapter 11 case.

## JUDGMENT ON DECISION BY THE COURT

Plaintiff's motion for a preliminary injunction having come on for hearing before the court, Honorable Burton Perlman, United States Bankruptcy Judge presiding, and the issues having been duly heard and a decision having simultaneously herewith been rendered,

It is Ordered and Adjudged that defendant is enjoined from proceeding further in its action *Mapco Fertilizer, Inc. v. N-Ren Illinois, Inc.*, Case No. 86CH34, pending in the Circuit Court, 15th Judicial Circuit, Jo Daviess County, Illinois, pending further order of this court.