In re **NATIONAL CENTURY FINAN-CIAL ENTERPRISES, INC.**, an Ohio Corporation, et al., Debtors.

No. 02–65235.

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

Jan. 15, 2003.

874

Sam J. Alberts, Peter D. Isakoff, Jeannine R. Lesperance, U.S. Dept. of Justice, Holly E. Loiseau, Washington, DC, Thomas R. Allen, Robert A. Bell, Jr., James P. Botti, Nick V. Cavalieri, Kenneth R. Cookson, Charles H. Cooper, Jr., Yvette A. Cox, Lisa M. Diem, Stephen D. Estelle, J. Matthew Fisher, Leon Friedberg, Reginald W. Jackson, David G. Korn, Sherri Blank Lazear, David C. Levine, Albert J. Lucas, Frederick M. Luper, Andrew M. Malek, Larry J. McClatchey, Jack R. Pigman, Susan L. Rhiel, Keith Shumante, Myron N. Terlecky, David M. Whittaker, Joseph C. Winner, Joseph M. Witalec, Columbus, OH, Nancy V. Alquist, Baltimore, MD, David B. Anderson, Birmingham, AL, Scott L. Baena, John K. Cunningham, Thomas E. Lauria, Miami, FL, Dale C. Christensen, Jr., Dennis J. Drebsky, Michael E. Foreman, John M. Galban, Andrew K. Glenn, Alan D. Halperin, Jed A. Hart, Ronna G. Jackson, Lester M. Kirshenbaum, Howard Kleinhendler, Harold S. Novikoff, Deryck A. Palmer, Michael Pearce, David S. Rosner, James M. Sullivan, Andrew M. Troop, New York City, Robert M. Conway, Vincent J. Marriott, Lawrence G. McMichael, David Newmann, Gregory L. Segall, Philadelphia, PA, Tobey M. Daluz, Wilmington, DE, Daniel A. DeMarco, James M. Lawniczak, c/o Calfee, Halter & Griswold LLP, G. Christopher Meyer, Scott N. Opincar, Lee D. Powar, Dean P. Wyman, Office of the U.S. Trustee, Cleveland, OH, Jeffery A. Deller, Mark E. Freedlander, Edwin L. Klett, Pittsburgh, PA, John R. Dunlap, Memphis, TN, Amanda C. Ellis, Worcester, MA, George E. Ellis, Robert G. Sanker, Cinncinnati, OH, Richard M. Grant, Novato, CA, Deborah S. Griffin, Jennifer Hertz, Steven T. Hoort, D. Ethan Jeffery, Robert A. McCall, Paul D. Moore, Boston, MA, Robert R. Hall, Phoenix, AZ, Robert S. Hertzberg, Detroit, MI, Russell R. Johnson, Richmond, VA, Kenneth P. Kansa, Chicago, IL, Kimberly E. C. Lawson, Wilmington, DE, Jim Lundberg, Provo, UT, Gerald J. McConomy, Chester Springs, PA, John McDermott, Robert Jay Moore, Fred Neufeld, Matthew X. Oster, Victoria Pynchon, Mary H. Rose, Russell W. Roten, Howard Steinberg, Paul Woolls, Los Angeles, CA, Toni Marie McPhillips, Newark, NJ, Michelle A. Mendez, Scott Ryskoski, John K. Turner, Dallas, TX, James S. Mowery, Jr., Dublin, OH, D. Tyler Nurnberg, Ted K. Yasuda, Chicago, IL, Terri A. Roberts, Tucson, AZ, Joel I. Sher, Baltimore, MD, Beverly H. Shideler, Oakbrook, IL, Leonard M. Shulman, Foothill Ranch, CA, Ray Wong, San Franciso, CA, for creditor.

Peter A. Chapman, Trenton, NJ, pro se.

Charles M. Oellermann, Jones, Day, Reavis & Pogue, Columbus, OH, Ernest B. Williams, Nashville, TN, for debtors.

### ORDER ON MOTION OF DEBTORS PURSUANT TO SECTION 105, FOR ENTRY OF ORDER PRESERVING CERTAIN ASSETS OF DEBTORS' ESTATE (PLEADING No. 252)

DONALD E. CALHOUN, Jr.,
Bankruptcy Judge.

This matter came before the Court for an expedited hearing on December 16, 2002 upon the Motion of Debtors, Pursu-

ant to Section 105, for Entry of Order Preserving Certain Assets of Debtors' Estate (" Motion"), the declaration of John E, McDermott in Support of Debtors' Section 105 Motion for Stay Order to Preserve Certain Assets of Estate ("Declaration"), and the Objection to Debtors' Motion, Pursuant to Section 105, for Entry of Order Preserving Certain Assets of Debtors' Estate ("Memo Contra") filed by Republic Indemnity Company of America.

Counsel for Debtors, counsel for JPMorgan Chase Bank, Trustee, counsel for Republic Indemnity Company of America, counsel for an Ad Hoc Committee of NPF XII, Inc. bondholders, counsel for NPI Medical Group, counsel for Allegiant Physician Services, Inc. and National Pain Institute, Inc., and counsel for ING Capital Markets, LLC, Ofivalmo Gestion, and Western Southern Life Assurance Company entered their appearances at the December 16, 2002 hearing. Counsel submitted legal arguments concerning Motion and relied upon the documents filed in support of the Motion. The parties provided the Court with no additional testimony or evidence.

## I. Statement of Jurisdiction

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding under 28 U.S.C. § 157(b)(2)(O).

## II. Brief Factual History and Summary of Parties' Arguments

### A. Factual History

Based upon the representations and arguments of the parties, the related California state court litigation, *NPI Medical Group, et al. v. State Compensation Insurance Fund,* Case No. BC 116099 in the Superior Court of the State of California, County of Los Angeles, has been pending for almost eight years. The California state court litigation was filed by seven plaintiffs, all medical providers, against a group of workers' compensation insurers. In the complaint, the medical providers asserted certain statutory and tort claims and alleged that the insurers had conspired to put them out of business by intentionally mishandling their lien claims before the workers' compensation appeals board.

The plaintiffs in the California state court litigation included: Charles J. Vacanti, M.D. d/b/a NPI Medical Group; Marina Pain Physicians Medical Group, Inc.; Marina Del Ray Ambulatory Surgery Center; Huntington Pain Physicians Medical Group, Inc.; Pain Centers of America Medical Group, Inc.; National Pain Institute, Inc. ("NPI") d/b/a Huntington Beach Surgery Center; and Allegiant Physician Services, Inc. ("Allegiant"). *See, Charles J. Vacanti, M.D. v. State Compensation Insurance Fund,* 24 Cal.4th 800, 102 Cal. Rptr.2d 562, 14 P.3d 234 (2001).( A copy of this California Supreme Court decision was attached to the Declaration). The California state court entered a judgment of dismissal after sustaining defendants' general demurrers on the ground that the exclusive jurisdiction of the claims was with the workers' compensation appeals board. The case worked its way through the California appellate court system. On January 4, 2001, the California Supreme Court affirmed the trial court, in part, and reversed and remanded certain causes of action back to the trial court. The remaining issues pending before California state court are now set for trial on March 17, 2002. (Declaration, pp. 2–3).

By way of background, Debtors financed the receivables of Allegiant and its wholly owned subsidiary, NPI. In 1996, Allegiant filed its own Chapter 11 bankruptcy proceeding in Atlanta, Georgia. As part of

Allegiant's Chapter 11 plan of reorganization, Debtors agreed to advance $500,000.00 to Allegiant. That advance allowed Allegiant to obtain approval for its reorganization plan, and in exchange, Debtors obtained control of the California state court litigation. (Declaration, pp. 1–2).

On or around February 17, 2000, NPF Capital, Inc., Allegiant and NPI entered into a "Litigation Control and Security Agreement and Assignment of Litigation Proceeds" agreement ("Litigation Agreement"). Pursuant to the Litigation Agreement, and, as security for the repayment of the sum of $500,000.00, Allegiant and NPI granted to NPF Capital a security interest in Allegiant's and NPI's right, title and interest in all claims asserted against the defendants in *NPI Medical Group, et al. v. State Compensation Insurance Fund,* Case No. BC 116099 in the Superior Court of the State of California, County of Los Angeles. Pursuant to the Litigation Agreement, NPF Capital was given full and complete control over the California state court litigation. (Declaration, pp. 2–3).

In furtherance of the Litigation Agreement, on or around March 1, 2001, the same parties and other plaintiff entities within the California state court litigation entered into a California Litigation Proceeds Allocation Agreement ("Allocation Agreement"). Through this Allocation Agreement, the parties set forth certain terms and conditions regarding the payment of expenses and the recovery of any litigation proceeds from the California state court litigation. (Motion, Exhibit A).

### B. Summary of Arguments

On November 18, 2002, Debtors commenced their respective bankruptcy reorganization cases by filing petitions for relief under Chapter 11 of the Bankruptcy Code. National Century Financial Enterprises, Inc. is the parent of each of the other Debtor entities, including NPF Capital, Inc. On November 8, 2002, Lance K. Poulsen, the Chairman of the Board of Directors of National Century Financial Enterprises, resigned all of his director and officer positions with the Debtors. Contemporaneously, with these resignations, Debtors retained a crisis management firm to manage the Debtors' operations.

On December 9, 2002, the Debtors filed their Motion. Through the Motion, Debtors seek an order from the Court pursuant to 11 U.S.C. § 105 staying all activity in the California state litigation for a period of ninety (90) days, with the understanding that within that time period Debtors will make a determination as to whether they will assume, reject or otherwise terminate their obligations under the Litigation Agreement between NPF Capital, Inc., Allegiant, and NPI.

At the December 16, 2002 hearing, Debtors argued that they have ongoing obligations pursuant to the Litigation Agreement. Debtors further argued that those obligations will require them to expend significant sums, approximately $100,000.00 per week, for legal fees, expert fees, and expenses related to preparation for the March 17, 2003 trial in the California state litigation. Debtors asserted that the potential recovery for them within the California litigation may be the largest asset within their bankruptcy proceeding. However, Debtors asserted that they currently need a brief stay for all of the stakeholders and Debtors' estates to get their arms around this situation. Debtors also asserted that the requested ninety (90) day stay is needed because all of the board members and principal officers of the Debtors resigned prior to the bankruptcy petitions being filed. Persons unfa-

miliar with the California state court litigation are now required to determine if the funding for that case should proceed.

JPMorgan Chase Bank, a Trustee, an Ad Hoc Committee of NPF XII, Inc. Interest Holders, ING Capital Markets, LLC, Ofivalmo Gestion, and Western Southern Life Insurance Company also argued that they need more time to assess whether or not it is in the best interest of the estate and its creditors to continue to fund the California state court litigation. These parties and the Debtors asserted that this Court, and no other court, has the jurisdiction to stay the California state court action for a short time in order to preserve the bankruptcy estate.

Republic Indemnity Company of America ("Republic") was the only party to object to the Motion and appear at the December 16, 2002 hearing in opposition to the Motion. Republic's objections included, but were not limited to the following: (1) the Debtors are seeking injunctive relief pursuant to 11 U.S.C. § 105 and that relief must be sought pursuant to an adversary proceeding; and (2) the Debtors have failed to satisfy their burden of proving their need for injunctive relief.

## III. Legal Discussion

### A. Section 105(a)

 The relief sought by the Debtors is premised on 11 U.S.C. § 105(a). Section 105 provides that a bankruptcy court may " issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Through their Motion, Debtors seem to seek short term injunctive relief. In determining whether to issue such relief, the Court must consider the traditional factors governing injunctions issued pursuant to Rule 65 of the Federal Rules of Civil Procedure. See In re Eagle–Picher Industries, Inc., 963 F.2d 855, 858 (6th Cir.1992). Those factors are: (1) the likelihood of the movant's success on the merits, (2) whether movant will suffer irreparable harm without the injunction, (3) the harm to others which will occur if the injunction is granted, and (4) whether the injunction would serve the public interest. Id. The Court must balance these four factors. No single factor is determinative as to the appropriateness of the equitable relief sought. In re N–Ren Corp., 64 B.R. 773, 776 ( Bankr.S.D.Ohio, 1986) and In re DeLorean Motor Co. 755 F.2d 1223, 1228 (6th Cir.1985).

### B. Rule 7001 of the Federal Rules of Bankruptcy Procedure

 Before getting to these factors, however, the Court must consider Republic's objection that injunctive relief must be sought through an adversary proceeding pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure. Bankruptcy Rule 7001(7) requires an adversary proceeding where the relief sought is injunctive. In re N–Ren Corp., 64 B.R. 773. Such an adversary proceeding was not brought in this case.

However, certain ˉbankruptcy courts have found that judicial economy permits them to look beyond Rule 7001. See, In re Service Merchandise, 256 B.R. 755, 765 (Bankr.M.D.Tenn.2000); In re Orfa Corp. of Philadelphia, 170 B.R. 257, 275–76 (E.D.Pa.1994); In re Adams, 106 B.R. 811, 833 (Bankr.D.N.J.1989); and In re Enfolinc, Inc., 233 B.R. 351, 353 (Bankr.E.D.Va. 1999). Courts have determined that "[w]here the rights of the parties have been adequately represented, no prejudice results from consideration of the issues on the merits." In re Robinson, 217 B.R. 527, 530 (Bankr.E.D.Tex.1998).

While Republic's counsel argued that prejudice was present in that Debtors

were seeking an injunction against parties who were not even before the Court, the Court cannot make a finding of such prejudice. During the hearing, Republic argued that five of the seven plaintiffs' interests in the California state court litigation were not pledged to Debtors. However, when the Court asked about the other five plaintiffs, counsel for NPI stated that the other five plaintiffs did make a similar agreement(s) with the Debtors. (Transcript, pp. 40–41). Effectively, they were being represented by the Debtors. When the Court asked if Republic represented all of the remaining defendants in the California state court litigation. Counsel for NPI stated that the claims are joint and several. (Transcript, p. 49). Based upon this Court's review of arguments of counsel and the pleadings filed, it can find no credible evidence of prejudice or of lack of adequate representation. Therefore, the Court cannot sustain Republic's objection based upon Rule 7001 and must move on to determine if the Debtors have met their burden of proof as to the injunctive relief requested.

### C. Injunctive Relief Factors

#### 1. Likelihood of success on the merits.

■ In the bankruptcy context, the requirement of probability of success on the merits is generally defined as the possibility of successfully effectuating a plan of reorganization. *See, In re Baldwin— United Corp.,* 57 B.R. 759, 766 (S.D.Ohio 1985). In their arguments and representations, Debtors did not address this factor directly. They simply stated that this potential recovery for Debtors within the California litigation may be the largest asset within their bankruptcy proceeding. The Court cannot ignore that this potential recovery and the impact of the expenses related to the California state court litiga-

tion will certainly have an impact upon the Debtors.

#### 2. Likelihood of irreparable harm.

In support of the Motion, Debtors rely upon cases such as *Kane v. Johns–Manville Corp.,* 843 F.2d 636 (2d Cir.1988) and *In re Eagle–Picher Industries, Inc.,* 285 F.3d 522 (6th Cir.2002). However, these cases are factually distinctive from this case. In *Johns–Manville,* the court in the Southern District of New York issued injunctive relief to protect the reorganization efforts of the debtors from costly litigation cases that would require the assistance of debtors and non-debtor affiliates. In *Eagle–Picher,* Judge Perlman of the Southern District of Ohio issued an injunction enjoining shareholders from continuing with a state court action against nondebtor officers of the debtor. The court determined that the nondebtor officers were so intertwined that the action against them threatened the debtor's reorganization. *In re Eagle–Picher Industries, Inc.,* 285 F.3d at 526.

In this case, the Debtors are not parties to the California state court litigation. Instead, they have control of it by holding the purse strings for litigation costs and expenses for the plaintiffs within the California litigation. Continuation of the California state court litigation will not require the assistance of debtors for witness testimony and the like. (Transcript, p. 47). While the Court recognizes that the continued funding of the California litigation could have a harmful impact upon the Debtors, the Court also recognizes that the Debtors and the counsel funded by the Debtors within the California state court action have been actively in charge since February 17, 2000. (Transcript, p 44). Certainly, the counsel funded by the Debtors can be helpful to advise Debtors and related parties about the prospects of re-

covery and future expenses involved in this litigation.

### 3. Harm to others.

During the hearing, Debtors argued that they are only seeking a brief ninety (90) day stay of the California state litigation. They also asserted that the stay would cause no harm to Republic because the expenses for plaintiffs and defendants involved in the California litigation would be equally stayed. In response, Republic argued that such a stay would cause harm to it and to others, including the California state court.

In reviewing this matter, the Court concludes that the stay, while brief, would cause harm to the other parties involved. The California state court has already considered a motion to stay and denied it. The matter is set to begin on March 17, 2003 and is scheduled for a three week trial. Certainly, this Court has experience with setting dockets for cases and recognizes that things would not just pick up where they left off when the proposed ninety (90) day stay would end. The proposed ninety (90) day stay would certainly cause difficulties for the California state court to get the matter rescheduled.[1] The California state court litigation involves not just the parties and their counsel, but it also involves witnesses, court personnel, attorneys, memories of witnesses, ability to collect any awarded damages, and other factors. The California state court litigation has been pending for eight years, and the parties involved have had to fund and endure the case for that long. Certainly, those parties would be caused harm by the stay requested by a non-party to the California state court litigation.

### 4. Public interest.

The Sixth Circuit has deemed the interests of the creditors to a bankruptcy estate to be the equivalent of "the public interest" requirement for an injunction. *In re Eagle–Picher*, 963 F.2d at 861. Certainly, the Court will consider those interests of the creditors in the balance of the injunctive relief factors.

## IV. CONCLUSION

The Court has taken into account all of the above referenced matters into consideration. In balancing the injunctive relief factors, the Court concludes that the ninety day stay requested by the Debtors cannot be approved. This case is distinguished by the fact that the Debtors are not parties to the California state court litigation and because Debtors have had an ongoing role within the California state court litigation in controlling the funding of that litigation. In balancing the factors, the Court concludes that significant harm would exist if the injunctive relief sought by Debtors was granted and that the Motion should be denied. Therefore, based upon the foregoing, it is hereby

Ordered that Motion of Debtors, Pursuant to Section 105, for Entry of Order Preserving Certain Assets of Debtors' Estate is DENIED.

IT IS SO ORDERED.

---

1. This Court certainly recognizes that the California state court controls its own docket and that matters are still pending in that case that could cause a rescheduling of the trial date. Those decisions are under the control and purview of the California state court.